**Antonio E. HERRERA, Plaintiff,**

v.

**AMOCO PRODUCTION COMPANY, a Delaware corporation, and Waverly Lamb, d/b/a Wavco Oilfield Service, John Doe Manufacturing Company, an Unknown Manufacturer, and John Doe Supply Company, an Unknown Supplier, Defendants,**

and

**AMOCO PRODUCTION COMPANY, a Delaware corporation, Third-Party Plaintiff,**

v.

**AZTEC WELL SERVICING COMPANY, a New Mexico corporation, Third-Party Defendant.**

**No. CV 83–1896 JB.**

United States District Court, D. New Mexico.

Nov. 27, 1985.

Don Wills, Briones, Pittard & Odenwald, P.A., Farmington, N.M., for plaintiff.

Jeffrey Twersky and R.E. Thompson, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Mark B. Thompson, III, Albuquerque, N.M., for Amoco Production Co.

Richard L. Gerding, Tansey, Rosebrough, Roberts & Gerding, P.C., Farmington, N.M., for Aztec Well Servicing Co., third-party defendant.

**MEMORANDUM OPINION**

BURCIAGA, District Judge.

THIS MATTER comes on for consideration of defendant and third-party plaintiff AMOCO PRODUCTION COMPANY ("Amoco")'s Motion for Partial Summary Judgment on four issues. By agreement of both parties, the Court entered a partial summary judgment on three of the issues. The remaining issue to be decided is wheth-

er Amoco is entitled to indemnity, up to applicable insurance limits, for its own negligence, if any, plus costs of defense.

From the memoranda of the parties, it is clear that there is no genuine issue as to any material fact and that the issue may be decided as a matter of law.

On February 10, 1981, AZTEC WELL SERVICING COMPANY ("Aztec") was performing services for Amoco pursuant to a well and lease service master contract. On that date, plaintiff, one of Aztec's employees, was injured when a blow line separated and struck him. Herrera brought suit against Amoco who, in turn, filed a Third-Party Complaint against Aztec, claiming indemnity pursuant to the provisions of the contract. The pertinent part of the contract provides:

10. In order to eliminate controversies between Contractor, its Subcontractors, and Pan American [Amoco] and its joint owners, if any, and their respective insurers, Contractor assumes all liability for and hereby agrees to defend, indemnify and hold Pan American, its joint owner or owners, if any, and their insurers, harmless from and against any and all losses, costs, expenses, and causes of action, including attorney's fees and court costs, for injuries to and death of Contractor's and its Subcontractor's employees, arising out of, incident to, or in connection with any and all operations under this contract and whether or not such losses, costs, expenses and cause of action are occasioned by or incident to or the result of the negligence of Pan American, its joint owner or owners, if any, and its agents, representatives, and employees. Contractor agrees to insure this assumption of liability. The liability assumed by Contractor pursuant to this clause shall be limited to the amounts carried by Contractor's current liability insurance, but in no event shall it be less than the minimum limits set out in Paragraph 11(b) below.

The provisions of Paragraph 11, to which Paragraph 10 makes reference, obligate Aztec to secure comprehensive general public liability insurance with minimum limits of liability for injury or death of one person of $100,000, injuries or death arising out of one occurrence of $200,000, and property damage of $25,000 for each accident and $50,000 aggregate.

It is under these provisions that Amoco claims its right to indemnity. Aztec argues, however, that Section 56–7–2, NMSA 1978, invalidates the indemnity agreement between the parties. That statute provides, in pertinent part:

. . . . .

A. Any agreement . . . pertaining to any well for oil . . . which purports to indemnify the indemnitee against loss or liability for damages, for:

. . . bodily injury to persons;

. . . . .

(4) . . . arising from the sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee or any independent contractor who is directly responsible to the indemnitee, or from any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee . . . is against public policy and is void and unenforceable. This provision shall not affect the validity of any insurance contract. . . .

In response, Amoco asserts that the last sentence of Section 56–7–2(A)(4) creates an exception which allows indemnity if the risk of loss is passed on to an insurer of Aztec. This reading, Amoco argues, gives validity to an indemnity contract by placing the risk of ultimate liability in the commercial insurance marketplace; that in that context, the indemnity agreement is not contrary to public policy since knowledgeable companies allocate the risk between them as part of the contract price.

In *Brasher v. Mobil Oil Corporation,* CV 83–1226 BB, this Court, by The Honorable Bobby Baldock, dealt with a similar claim for indemnity by Mobil Oil Corporation against Coleman Drilling Company and discussed Section 56–7–2, NMSA 1978. In

considering the effect the last sentence of 56–7–1(A)(4), Judge Baldock stated:

> Furthermore, the statutory prohibition against indemnification does not affect the validity of any insurance contract. 56–7–2(A)(4), NMSA 1978. Thus, in New Mexico, one may provide for indemnification through insurance.

> A careful analysis of Texas law fails to indicate any conflict with New Mexico public policy. Like New Mexico's statute, the Texas law declares indemnity provisions in oil and gas agreements, where there is negligence attributable to the indemnitee, void and unenforceable as against Texas public policy. ... Contractual indemnity is permitted, however, if covered by liability insurance and then only to the limits of the insurance. ... The same result may be achieved under New Mexico law through an insurance contract.

The Court is persuaded that Judge Baldock's ruling is a correct interpretation of the statute. It also comports with the public policy of promoting the freedom of the right to contract between competent parties. Echoing the Supreme Court of New Mexico, "great damage is done where businesses cannot count on certainty in their legal relationship and strong reasons must support a court when it interferes in a legal relationship voluntarily assumed by the parties." *City of Artesia v. Carter*, 94 N.M. 311, 610 P.2d 198 (Ct.App.1980).

In the instant case, it is clear that Amoco had the right to impose an obligation upon Aztec to secure liability insurance to protect Amoco against its negligence and that of its employees. Stated another way, Amoco had the right to purchase liability insurance protecting it against its negligence and that of its employees. Similarly, it had the right to impose that same obligation upon Aztec as part of the contract bargain. In reaching this conclusion, the Court is also of the view that this interpretation is consistent with the public policy behind Section 56–7–2 to promote safety. Moreover, it also furthers a second impor-

tant public policy—that of freedom of contract. It enforces the loss distribution agreed to by both parties.

Accordingly, Amoco's motion for partial summary judgment on this issue is granted. An appropriate order shall be entered consistent herewith.

## ORDER

THIS MATTER having come before the Court for consideration of third-party defendant AZTEC WELL SERVICING COMPANY's Motion for Interlocutory Appeal and Stay of Proceeding, and that Court being fully advised in the premises, finds that the motion is not well taken and should be denied;

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that third-party defendant AZTEC WELL SERVICING COMPANY's Motion for Interlocutory Appeal and Stay of Proceeding be, and it hereby is, denied.