Antonio E. HERRERA, Plaintiff,

v.

AMOCO PRODUCTION COMPANY, a Delaware Corporation, and Waverly Lamb, d/b/a Wavco Oilfield Service, Defendants,

and

AMOCO PRODUCTION COMPANY, a Delaware Corporation, Third-Party Plaintiff,

v.

AZTEC WELL SERVICING COMPANY, a New Mexico Corporation, Third-Party Defendant.

Civ. No. 83–1896–JB.

United States District Court, D. New Mexico.

Feb. 24, 1986.

David Pittard, Don Wills, Briones, Pittard & Oddenwald, P.A., Farmington, N.M., for plaintiff.

Jeffrey Twersky and R.E. Thompson, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Mark B. Thompson, III, Albuquerque, N.M., for Amoco Production Co.

Richard L. Gerding, Tansey, Rosebrough, Roberts & Gerding, P.C., Farmington, N.M., for Aztec Well Servicing Co.

## MEMORANDUM OPINION

BURCIAGA, District Judge.

Antonio E. Herrera, Plaintiff herein, was an employee of Aztec Well Servicing Company, hereinafter referred to as "Aztec", when he sustained bodily injuries in an oilfield accident on February 10, 1981. At the time of the accident, Aztec was performing operations under a Well and Lease Service Master Contract, dated November 7, 1969, with Amoco Production Company, hereinafter referred to as "Amoco." Herrera brought an action against Amoco and others for damages arising from his bodily injuries. Amoco, in turn, brought a third-party complaint against Aztec seeking indemnification under the provisions of the Well and Lease Service Master Contract.

Prior to the trial on the merits, Amoco sought a partial summary judgment on its third-party complaint, contending that it was entitled to indemnity. In response, Aztec argued that § 56–7–2, N.M.S.A. 1978, invalidated the indemnity agreement between the parties. This Court granted a partial summary judgment to Amoco on its third-party complaint, ruling that although agreements indemnifying an indemnitee against loss or liability for its own negligence are against public policy in New Mexico and therefore void and unenforceable, § 56–7–2 (A)(4) N.M.S.A. 1978, created an exception; that this provision permits indemnity if the risk of loss is passed on to an insurer; that, therefore, Amoco was entitled to indemnification by Aztec, consistent with the obligations assumed by Aztec under the Well and Lease Service Master Contract.

Following a trial on the merits, a jury awarded Herrera damages in the sum of $1,250,000.00. Of this sum, Amoco is required to pay $802,500.00, the jury having found that Amoco negligently caused 65% of the damages.

The matter of the amount which Aztec must pay to Amoco under the previous partial summary judgment of the Court was tried to the Court without a jury. Amoco seeks indemnity from Aztec in the sum of $802,500.00, plus costs and expenses in the sum of $24,132.67, and attorney's fees in the amount of $60,786.30.

This Memorandum Opinion will constitute the Court's Findings of Fact and Conclusions of Law.

The pertinent provisions of the Well and Lease Service Master Contract between Amoco and Aztec provide as follows:

10. ... Contractor [Aztec] assumes all liability for and hereby agrees to defend, indemnify and hold Pan American [Amoco] ... harmless from any and all *losses, costs, expenses* and causes of action, including *attorney's fees and court costs,* for injuries to ... Contractor's ... employees, arising out of, incident to, or in connection with any and all operations under this Contract, whether or not such losses, costs, expenses and causes of action are occasioned by or incident to or the result of the negligence of Pan American....

Contractor agrees to insure this assumption of liability. *The liability assumed by Contractor pursuant to this clause shall be limited to the amounts carried by Contractor's current liability insurance, but in no event shall it be less than the minimum limits set out in Paragraph 11(b), below.*

. . . .

11. (b) Comprehensive General Public Liability Insurance with *minimum limits* of liability for injury to or death of one person of $100,000.00.... (Emphasis added.)

In accord with its obligations under the Well and Lease Service Master Contract, Aztec obtained a general liability insurance policy from Employer's Casualty Insurance Company for the period from April 1, 1980 to April 1, 1981, providing bodily injury liability coverage in the amount of $300,000.00 for each occurrence. Aztec also obtained an umbrella liability policy from Mission Insurance Company for the same policy period. The limit of liability for each occurrence under the Mission Insurance policy was $1,000,000.00, with a deductible amount of $10,000.00 which is characterized as a "Self Insured Retention." The effect of the deductible amount requires Aztec to pay $10,000.00 upon the exhaustion of all underlying insurances before Mission Insurance Company is obligated to pay any sum under its policy.

Amoco contends that under its Partial Summary Judgment, Aztec is required to indemnify Amoco in the full amount of the Judgment, including costs, expenses and attorney's fees, since Aztec is insured under the Employer's Casualty Company policy and the Mission Insurance Company policy in an aggregate amount of $1.3 million. Aztec, on the other hand, contends that, consistent with the Court's previous ruling, it is obligated to indemnify Amoco only in the amount of $100,000.00, the sum expressly set forth in the Well and Lease Service Master Contract.

It is clear that indemnity clauses such as the one implicated here are not favorites of the law. Indeed, it has long been said that they must strictly be construed against an indemnitee and will not be enforced if the indemnitee enjoys a bargaining power superior to the indemnitor, as where the indemnitor is required to deal with indemnitee on the latter's own terms. *Tyler v. Dowell,* 274 F.2d 890 (10th Cir.1960). The Court has no occasion to decide whether the relative bargaining powers of the parties were such as to deny enforceability since the Court already has ruled that the indemnity clause is enforcable to the extent that Aztec secured comprehensive general public liability insurance.

In determining the terms of the agreement between Amoco and Aztec, any ambiguities therein are to be resolved against Amoco since it is clear that the Well and Lease Service Master Contract was drawn by Amoco. It is also necessary to note that in interpreting indemnity agreements, the intention to indemnify an indemnitee against his own negligence must be "clear and unequivocal." *Metropolitan Paving Co. v. Gordon Herkenhoff & Assoc.,* 66 N.M. 41, 341 P.2d 460 (1959). This rule takes on added significance in light of § 56–7–2, N.M.S.A. 1978, interpreted by this Court in its previous Memorandum Opinion, which voids any such agree-

ments where liability is not otherwise passed on to an insurer of the indemnitor. Applying these general principles, the Court concludes that under the Well and Lease Service Master Contract, Aztec obligated itself to indemnify Amoco only to the sum of $100,000.00.

Those courts interpreting similar agreements, whose decisions this Court favors, typically have found that the limit of exposure of the indemnitee is the *minimum* limit of insurance coverage expressly set forth in the contract between the indemnitor and the indemnitee. *Dickerson v. Continental Oil Co.*, 449 F.2d 1209 (5th Cir. 1971); *cert. denied*, 405 U.S. 934, 92 S.Ct. 942, 30 L.Ed.2d 809 (1972); *Hicks v. Ocean Drilling & Exploration Co.*, 512 F.2d 817 (5th Cir.1975); *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976).

*Dickerson*, aptly described by the trial court as "a multiple donneybrook" in which theories of initial, contingent and secondary liabilities were asserted, arose out of an explosion and fire on an off-shore drilling platform located in the Gulf of Mexico. Multiple suits for damages for wrongful deaths, personal injuries and property damage were filed. One of the issues involved an indemnification agreement between Houma Well Service, the drilling contractor, and Continental Oil Company, the owner of the platform. A provision of the agreement stated that Continental was to be indemnified by Houma against any claims of Houma's employees, even if occasioned by the negligence of Continental. The appellate court affirmed the trial court in its ruling that Houma's duty of indemnification was limited to the *contractually required* coverage of $300,000.00. Applying Louisiana law, the trial court reasoned there was no violation of public policy in enforcing the indemnity agreement.

In *Hicks*, the Master Service Contract which was the subject of litigation required the indemnitor to secure $500,000.00 liability insurance coverage. The indemnitor argued that his obligation was impliedly reduced to $300,000.00, since he only secured that amount and it was known to the in-

demnitee. The court ruled, citing *Dickerson*, that the liability of the indemnitor was $500,000.00, the amount of insurance required by the contract.

The Court is aware of cases which hold a contrary view. *Smith v. Shell Oil Co.*, 746 F.2d 1087 (5th Cir.1984); *Lirette v. Union Texas Petroleum Corp.*, 467 So.2d 29 (La. App. 1 Cir.1983). But these cases are either distinguishable or do not strictly construe the indemnity provision. In any event, they are contrary to the view of this Court that the intention to indemnify must be clear and unequivocable and, further, that the indemnity agreement must be strictly read against the indemnitee.

A fair reading of the contract now before the Court reflects the clear intention of the parties to limit the liability to the stated limits in the insurance provision. If Amoco had wished to increase the indemnity requirements, it could have so required under the terms of the Well and Lease Service Master Contract. Since it did not, it cannot now claim a windfall by seeking the benefit of limits greater than those for which it contracted. And the Court is pursuaded of the correctness of its conclusion by an additional factor—the Self Insured Retention provision of the Mission Insurance Company policy.

■ The effect of the Self-Insured Retention clause of the Mission Insurance Company policy requires Aztec to pay the sum of $10,000.00 after the exhaustion of all underlying insurances before Mission became obligated under its policy. Clearly, the requirement that Aztec pay $10,000.00 of its own monies to indemnify Amoco for its own negligence would fly in the face of § 56–7–2, N.M.S.A. 1978, which effectively declares such agreements to be void and unenforceable as against public policy.

■ In addressing the claims of Amoco for its costs and attorney's fees, the Court is controlled by the last sentence of Paragraph 10 of the Well and Lease Master Service Contract, which, again, states:

The liability assumed by Contractor [Aztec] pursuant to this clause shall be *lim-*

*ited* to the amounts carried by Contractor's current liability insurance, but in no event shall it be less than the minimum limits set out in Paragraph 11(b), below. (Emphasis added.)

Applying the same principles as set forth above, the Court is constrained to conclude that the limit of Aztec's obligation to indemnify Amoco is $100,000.00 *to include* attorney's fees, costs and expenses incident to or the result of the negligence of Amoco.

An appropriate Order shall be entered consistent with this Memorandum Opinion.