755 P.2d 52

**AMOCO PRODUCTION COMPANY, Plaintiff–Appellant,**

v.

**ACTION WELL SERVICE, INC., Defendant–Appellee.**

No. 17414.

Supreme Court of New Mexico.

May 18, 1988.

Rehearing Denied June 7, 1988.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., R.E. Thompson, Dale B. Eppler, Albuquerque, for plaintiff-appellant.

Felker & Ish, P.A., Mark L. Ish, Carol J. Ritchie, Mariana G. Geer, Santa Fe, for defendant-appellee.

## OPINION

SOSA, Senior Justice.

Plaintiff-appellant, Amoco Production Company (Amoco), appeals a final order of dismissal in favor of Action Well Service, Inc., (Action), entered by the Eleventh Judicial District Court on October 15, 1987. The trial court dismissed Amoco's complaint pursuant to SCRA 1986, 1–012(B)(6) —"failure to state a claim upon which relief can be granted"—on grounds that a contract entered into between the parties giving Amoco a claim for indemnification against Action was violative of NMSA 1978, Section 56–7–2(A) (Repl.Pamp.1986). The trial court adjudged that the contract in question violated New Mexico public policy "by not encouraging safety in the work place, particularly in the oil field involving occupations known for dangerous working conditions." After reviewing the record below, arguments and briefs of counsel, and the recorded transcript, we affirm the trial court's judgment in its entirety.

FACTS

On May 15, 1984, Freddie Wagoner was working for Action as a derrick man at an oil lease site owned and maintained by Amoco. While standing on the derrick board, the derrick or drilling rig collapsed, causing Wagoner's death. Wagoner's estate sued Amoco in negligence in the United States District Court for the Southern District of Texas. Wagoner's estate eventually settled the action in his favor for $500,000. That much is undisputed. What is disputed is the question of whether Action should have honored a contract of indemnification it had entered into with Amoco which provided in pertinent part as follows:

> [Action] * * * agrees to defend, indemnify and hold Amoco * * * harmless from and against any and all losses, costs, expenses and causes of action, including attorney's fees and court costs, for injuries to and death of [Action's] and its Subcontractor's employees, * * * whether or not such losses, costs, expenses and causes of action are occasioned by or incident to or the result of the negligence of Amoco * * * * [Action] agrees to *insure* this assumption of liability. (Emphasis added.)

Action duly purchased two insurance policies providing coverage as follows: one policy with United General Insurance Company (General), for bodily injury with single limits of $300,000 for each occurrence, and a second policy with Harbor Insurance Company (Harbor) for bodily injury with single limits of $1,000,000 for each occurrence. Action's policy with General provided that General would "pay on behalf of [Action] all sums which [Action] shall become legally obligated to pay as damages because of personal injury * * * to which this insurance applies * * * and [General] shall have the right and duty to defend any suit against [Action] seeking damages on account of such injury * * * * * " Action's policy with Harbor merely provided that Harbor "shall have the right and shall be given the opportunity to associate with [Action] * * * in the defense and control of any claim or suit * * * reasonably likely to involve [Harbor]." General eventually became insolvent, and was unable, even if willing, to abide by the terms of its policy with Action.

On July 19, 1985, Amoco's attorney mailed Action a demand letter insisting that Action defend Amoco against the lawsuit brought by Wagoner's estate. Action ignored the letter. Amoco then filed suit against Action on May 11, 1987, seeking

indemnification of the $500,000 it owed Wagoner's estate, plus attorneys' fees and court costs totaling over $35,000. Action answered the complaint by alleging that the pertinent portions of the indemnity contract, as quoted above, "are in violation of the laws of the State of New Mexico, specifically § 56–7–2(A), N.M.S.A.Comp. as Amend. (sic) and are of no force and effect." Predicated upon this theory, Action, on July 20, 1987, filed its motion to dismiss. Amoco's position at the hearing on the motion, as is its position on this appeal, is that "up to the extent of applicable contractual liability insurance, the indemnity provisions are valid * * * * *"

## LEGAL ISSUES INVOLVED

Section 56–7–2(A), the statute in question, provides that any indemnity agreement pertaining to oil and gas well construction, which purports to indemnify the indemnitee against loss or liability for death or bodily injury to persons such as Wagoner here, whether the loss arises from the sole or concurrent negligence of the indemnitee, is against public policy and void. The statute adds the following language, which forms the underlying gravamen of this appeal: "This provision shall not affect the validity of any insurance contract * * * * *" § 56–7–2(A)(4).

Amoco's position on appeal is that (1) "The statute was not intended to prevent a company from ultimately obtaining indemnity by insurance and insurance alone. The Amoco–Action Contract (sic) only provides Amoco with indemnity by insurance * * * [T]he Contract (sic) really only requires Action to obtain and maintain insurance coverage." Brief for Appellant at 20, 11. Action's position on the other hand, is that Section 56–7–2(A)(4) "simply affirms the right of an individual party, such as Action * * * to obtain insurance against the potential of its *own* negligence * * * * The legislature merely affirmed that the statute is not intended to void an insurance contract obtained to protect a party against his *own* negligence." Brief for Appellee at 15, 20–21 (emphasis in original). In other words, Action argues that Section 56–7–2(A)(4) serves simply to preserve the contract of insurance between itself and its insurers; "it does not act to preserve any connection between Amoco and * * * General." Brief for Appellee at 27. Having formulated the issues, we now turn to the applicable law in order to resolve the disputed positions.

■ The controlling New Mexico case is *Guitard v. Gulf Oil Co.,* 100 N.M. 358, 670 P.2d 969 (Ct.App.), *cert. denied,* 100 N.M. 327, 670 P.2d 581 (1983), *followed* in *Tipton v. Texaco, Inc.* 103 N.M. 689, 696, 712 P.2d 1351, 1358 (1985). The court in *Guitard* construed the provisions of our statute to mean that an indemnitee cannot contract away liability for its own percentage of negligence. *Id.* at 361, 670 P.2d at 972. The court of appeals in *Guitard* accurately held that its ruling was consistent with that in *Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d 579 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982). The latter case established the rule as to comparative negligence in this jurisdiction, whereby two or more tortfeasors are liable for damages to a victim arising from their negligence, according to the percentage of negligence for which each of the tortfeasors was responsible. Thus, read together, *Guitard* and *Bartlett* stand for the proposition that both indemnitor and indemnitee may be liable to the victim of an accident such as that which occurred here, but only to the extent of their respective percentages of negligence.

Amoco agrees with the above, but argues that, despite the *Guitard* court's reading of the statute, Amoco nonetheless had the right to contract with Action so that Action would *insure* any portion of Amoco's possible liability that would otherwise have been voided by the provisions of the statute. To butress its position, Amoco relies principally on two federal cases: (1) The sister cases of *Herrera v. Amoco Production Co.,* 623 F.Supp. 378 (D.N.M.1985) *aff'd.* 843 F.2d 1394 (10th Cir.1988) (*Herrera 1*) and *Herrera v. Amoco Production Co.,* 629 F.Supp. 474 (D.N.M.1986) *rev'd.,* 843 F.2d 1394 (10th Cir.1988) (*Herrera 2*), where the district court, construing the identical statute before us here, permitted

indemnification of the indemnitee's negligence to the extent of the indemnitor's insurance coverage.[1]  (2) The second case relied on by Amoco is *Brashar v. Mobil Oil Corp.* 626 F.Supp. 434 (D.N.M.1984), where the court, construing Texas law, arrived at the same result as reached in *Herrera,* but by a different route.  The Texas statute better clarifies the relationship between the parties when the indemnitor provides insurance, by stating that the parties may "agree in writing that the indemnity obligation will be supported by available liability insurance coverage to be furnished by the indemnitor."  Texas Code Ann.1986, Civ.Prac. & Rem. § 127.005.[2]  Therefore it was relatively simple for the *Brashar* court to make the decision we are called upon to make here, in that the Texas legislature had more clearly explained the concept that appears in our statute simply under the words, "This provision shall not affect the validity of any insurance contract * * * * " N.M.S.A. 1978, § 56–7–2(A)(4).  The Texas statute, however, is not our statute, and it is not our duty to read the legislative enactments of New Mexico through the eyes of the legislature of Texas.  *Brashar,* then, does not necessarily support Amoco's position in the case at bar.

As stated by the district court in *Herrera 2* sub-paragraph (4) "created an exception; that this provision permits indemnity if the risk of loss is passed on to an insurer * * * * " *Id.* at 475.  In other words, both the district and Tenth Circuit courts in *Herrera* have agreed squarely with the position now advanced by Amoco. Yet, the district court in *Herrera* ignored the leading New Mexico case, *Guitard,* and by doing so ignored the public policy foundation underlying both Section 56–7–2(A)(4) and *Guitard.*  The Tenth Circuit Court of Appeals at least acknowledged *Guitard,* but held that it was inapposite because no policy of insurance insuring the indemnitor's obligation under an indemnity contract had been executed in that case.

*Herrera v. Amoco Prod. Co.,* Nos. 86–1343, 86–1476, slip op. at 6 (10th Cir. April 18, 1988).

The court in *Guitard* described the public policy behind this decision as follows:

First, the public policy behind § 56–7–2(A), is to promote safety.  The indemnitee, usually the operator of the well or mine, will not be allowed to delegate to subcontractors his duty to see that the well or mine is safe.  Our interpretation furthers the public policy behind the statute, which is to promote safety.  Both the operator and the subcontractor will have incentive to monitor the safety of the operation knowing that they will be responsible for their respective percentage of negligence.

*Guitard,* 100 N.M. at 361–2, 670 P.2d at 972–3.

■ Here is the crux of the issue—namely, the public policy underlying the legislative enactment which we are called upon to interpret.  We feel constrained to go beyond the holding in *Guitard,* and shall not do so.  We therefore hold that the words in sub-paragraph (4) of our statute—"this provision shall not affect the validity of any insurance contract * * * * "—are not to be applied in the sense given by either of the courts in *Herrera* or the court in *Brashar.*  If our legislature deems it proper to amend subparagraph (4) so that it becomes congruent with the Texas statute cited above, it may do so.  As of now, however, our legislature has not chosen to take such a step.  It is our conclusion that the legislature chose the words it actually did in order to promote safety—to quote the trial court, "particularly in the oil field involving occupations known for dangerous working conditions."

Therefore, we conclude that subparagraph (4) applies to insurance purchased by the indemnitor to protect *its* interests, and not the interests of the indemnitee.

---

**1.** *Herrera 1, id.; Herrera 2* dealt mainly with the issue of the *extent* of insurance coverage and is not as pertinent to our opinion as is *Herrera 1.* The reversal of *Herrera 2* is not germane to our holding here.

**2.** Alternate citation as called for by authorized publisher: V.T.C.A., Civil Practice & Remedies Code § 127.005.

Whereas the federal district court of New Mexico has traditionally sought our judgment in cases of first impression, this time it did not, resulting in protracted litigation in the federal courts which was unnecessary.

For all the foregoing reasons, we affirm the judgment of the trial court dismissing Amoco's complaint with prejudice.

IT IS SO ORDERED.

RANSOM, J., concurs.

SCARBOROUGH, C.J., concurs in result only.