915 P.2d 901

Mildred SABELLA, Plaintiff–Appellant,

v.

MANOR CARE, INC., a/k/a Quality Inns International, Inc., a/k/a Quality Inns, Inc., a Delaware corporation; and Four Seasons Nursing Center, Inc., a Delaware corporation, Defendants–Appellees.

No. 22965.

Supreme Court of New Mexico.

April 10, 1996.

Charles G. Berry & Associates, P.A., Charles G. Berry, Stephen P. Eaton, Albuquerque, for Appellant.

Civerolo, Wolf, Gralow & Hill, P.A., Kathleen D. Lebeck, Nickay B. Manning, Albuquerque, for Appellees.

### OPINION

BACA, Justice.

1. Appellant Mildred Sabella appeals from a district court order that dismissed her claim against her former employer, Appellee Manor Care, Inc. (Manor Care), for sex dis-

crimination under the New Mexico Human Rights Act, NMSA 1978, §§ 28–1–1 to –15 (Repl.Pamp.1991 & Cum.Supp.1994) (the "NMHRA"). We address the following issues on appeal: (1) Whether Sabella failed to exhaust her administrative remedies as required by the NMHRA before she filed a complaint in the district court for alleged sex discrimination, and (2) whether Sabella's claim of sex discrimination under the NMHRA is barred by the exclusivity provisions of the New Mexico Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (Repl.Pamp.1991 & Cum.Supp.1994) (the "WCA"), or by her recovery under the Act. We note jurisdiction under NMSA 1978, Section 28–1–13(C) (Repl.Pamp.1991) (providing that judgment of district court in appeal from Human Rights Commission is appealable to Supreme Court), and we reverse and remand.

**I.**

2. In 1989 and 1990 Sabella was employed by Manor Care as a housekeeper and laundry aide. Sabella alleges that, from December 11, 1989 to January 11, 1990, her immediate supervisor sexually harassed her. On January 11 the supervisor reassigned her from her position as housekeeper to laundry aide, allegedly for rejecting his advances. Sabella reported the alleged harassment to a senior supervisor, who allegedly told her that it was just his (the immediate supervisor's) way and took no remedial action. On February 8 Sabella filed a grievance with the Equal Employment Opportunity Commission (the "EEOC") and the New Mexico Human Rights Division (the "NMHRD"), reporting the alleged sex discrimination.[1] On February 22 Sabella amended her EEOC complaint, alleging that Manor Care retaliated against her for reporting the sexual harassment and forced her to resign.

3. The NMHRD notified Manor Care that Sabella's complaint was within the jurisdiction of the NMHRA and that it was filed with the EEOC for the purpose of eliminating dual investigations. The NMHRD also informed Manor Care that it would be conducting a non-biased investigation and that Manor Care was required to respond to the complaint.

4. On October 16, while the investigation was pending, Sabella filed a claim for workers' compensation benefits. She claimed that when she was sexually harassed in December 1989, she was physically assaulted, suffering a bruised breast and emotional trauma. On July 29, 1991, Sabella and Manor Care agreed to settle her workers' compensation claim. Under the agreement Sabella's medical expenses were paid and she received a lump sum settlement. In addition, Sabella signed a Release and Satisfaction of Liability and Future Medical Care, releasing and discharging Manor Care

> of all manner of claims, damages, actions, or causes of action which I ever had or may hereafter have under the Workers' Compensation Act ... for or on account of or by reason of any injury, damage, loss, pain or suffering or disfigurement resulting to me from injuries or occurrences I allege during December 1989 and January 1990, while working for ... Manor Care.... *[T]his release is not in any way to be considered a release of my EEOC claim against Manor Care, Inc., and may not be used in any fashion in that claim.* (Emphasis added.)

5. On August 24, 1993, Sabella requested and received an order of nondetermination from the NMHRD pursuant to Section 28–1–10(D) (allowing person filing complaint to NMHRD to request and receive order of nondetermination 180 days after complaint was filed). Sabella then appealed the order to the district court pursuant to Section 28–1–13(A) (allowing person aggrieved by order of NMHRD to appeal to district court and obtain trial de novo).

6. Manor Care filed a motion to dismiss under SCRA 1986, 1–012(B)(6) (Repl. Pamp.1992) (providing dismissal of claim for failure to state claim upon which relief can be granted), arguing that Sabella, by filing her grievance solely with the EEOC and not with

---

1. The New Mexico Human Rights Division regulations define "sex discrimination" to include "sexual harassment." N.M. Human Rights Div. I(A)(27)(a) (September 1988). Thus, when referring to sex discrimination, this opinion is also referring to sexual harassment.

the NMHRD, failed to exhaust her administrative remedies as required by the NMHRA. Manor Care also argued that in the workers' compensation proceeding Sabella released Manor Care from any future claims, including any claim under the NMHRA. Additionally, Manor Care argued that the WCA provides Sabella's sole and exclusive remedy for her alleged injuries and that she had already received workers' compensation benefits for those injuries. Manor Care filed various exhibits in support of its motion to dismiss, including Sabella's EEOC complaint, her workers' compensation complaint, and the various workers' compensation settlement documents.

7. In her response to Manor Care's motion, Sabella filed the affidavit of Lillian M. Roybal, Bureau Chief for NMHRD's Investigations and Compliance Bureau, in which Roybal stated that the NMHRD and the EEOC had a work-sharing agreement to avoid duplication of the factual investigations of alleged sex discrimination. The work-sharing agreement provided that the agencies "each designate the other as its agent for the purposes of receiving charges based on race, color, religion, sex or national origin." The district court granted Manor Care's motion to dismiss. Sabella appealed the district court's order to the Court of Appeals, which transferred the matter to this Court pursuant to Section 28-1-13(C).

## II.

■ 8. We analyze a motion to dismiss as a motion for summary judgment, SCRA 1986, 1-012(C) (Repl.Pamp.1992), when evidence outside the pleadings is considered. *Sanchez v. Church of Scientology*, 115 N.M. 660, 664, 857 P.2d 771, 775 (1993). Although Manor Care styled its motion under SCRA 1-012(B)(6), it also attached numerous exhibits, including photocopies of Sabella's EEOC complaint, her workers' compensation complaint, and the various workers' compensation settlement documents. The district court in the instant case considered these exhibits in deciding to dismiss Sabella's complaint. Accordingly, the motion should have been viewed as a motion for summary judgment. A motion for summary judgment is

granted only when there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. SCRA 1-056(C).

## III.

■ 9. We first address whether Sabella failed to exhaust her administrative remedies before filing an appeal in district court. Manor Care relies on *Luboyeski v. Hill*, 117 N.M. 380, 382, 872 P.2d 353, 355 (1994), to argue that before a claim for violation of the NMHRA can be filed in district court, the claimant must first comply with the mandatory grievance procedures provided in the NMHRA. Manor Care further argues that by filing her complaint only with the EEOC and not with the NMHRD, Sabella's claim cannot be heard in district court. We agree that *Luboyeski* requires full compliance with NMHRA grievance procedures as a prerequisite to filing a claim in district court. We disagree, however, that Sabella failed to comply with these procedures. The work-sharing agreement and the NMHRD regulations provide that the NMHRD procedural requirements may be met by filing a complaint with either the NMHRD or the EEOC.

10. The work-sharing agreement provides in pertinent part:

In recognition of the common jurisdictions and goals of the two agencies, the NMHRD and EEOC have agreed to this Work Sharing Agreement which is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under the relevant statute.

. . . .

In order to facilitate the assertion of employment rights under Title VII, the EEOC and NMHRD each designate the other as its agent *for the purpose of receiving charges* based on race, color, religion, sex or national origin. (Emphasis added.)

. . . .

Each agency will inform individuals of their right to file with the other agency, and endeavor to aid any person alleging Title VII violations in drafting a charge

that will satisfy the requirements of the other agency. The delegation of authority to receive charges as contained in this paragraph does not include the rights of one agency to determine the jurisdiction of the other agency over a charge.

11. The NMHRD's regulations require that a complaint must be delivered by mail or personal delivery to the NMHRD, and the complaint is deemed filed as of the date it is received at the NMHRD office. However, the regulations also provide that

> for the purpose of complying with the one hundred eighty (180) day requirement of Section 28–1–10(A), ... complaints which are first filed with any duly authorized civil rights agency holding a work sharing agreement ... shall be deemed to have been filed with the Human Rights Division....

N.M. Human Rights Div. II(D)(2).

12. The foregoing provisions do not undermine the NMHRD procedural requirements but instead provide a more efficient method by which the grievance can be processed. Under their work-sharing agreement, the EEOC is an agent of the NMHRD for purposes of filing charges of discrimination pursuant to the NMHRA. Each agency is then required to forward to the other all charges of employment discrimination within forty-eight hours. Sabella timely filed a claim with the EEOC. Hence, she is deemed to have properly filed her complaint with the NMHRD.

13. Upon meeting the filing requirements, Sabella could then proceed with her grievance through either the EEOC or the NMHRD. She elected to pursue her claim through the NMHRD. Sabella then requested and received an order of nondetermination from the NMHRD pursuant to Section 28–1–10(D). Having complied with the NMHRD grievance procedures, we hold that Sabella could then appeal to the district court for a trial de novo. Section 28–1–13(A).

14. Having found that Sabella's EEOC complaint encompasses a NMHRA complaint as well, we find that the release does not discharge Manor Care from an action under the NMHRA.

## IV.

15. We now address whether Sabella's claim for sex discrimination is barred by the exclusivity provision of the WCA. Manor Care argues that Sabella's alleged injuries from sex discrimination—lost wages, pain, suffering, and emotional distress—are contemplated by the WCA. Manor Care further argues that because Sabella actually received a settlement for those injuries under her workers' compensation claim, she is estopped from pursuing her sex discrimination claim and recovering for those same injuries under the NMHRA. Under this set of facts, we disagree that a claim for sex discrimination under the NMHRA is barred by the WCA. Nor are we persuaded that Sabella has assumed contrary positions and that she therefore is estopped from pursuing her claim for sex discrimination. *Cf. Collier v. Wagner Castings Co.*, 81 Ill.2d 229, 41 Ill.Dec. 776, 408 N.E.2d 198 (1980) (stating that employee cannot claim injury is compensable for purposes of workers' compensation and subsequently deny injury was compensable in order to pursue disability claim against employer).

16. The WCA provides exclusive remedies for disabling injuries incurred in the work place.

> No cause of action outside the Workers' Compensation Act shall be brought by an employee or dependent against the employer or his representative, including the insurer, guarantor or surety of any employer, for *any matter relating to the occurrence of or payment for any injury or death covered by the Workers' Compensation Act.*

Section 52–1–6(E) (emphasis added). When an injury does not fall within the coverage formula of the WCA, the exclusivity provisions of the WCA do not preclude recovery other than under the WCA. This is not to say that further action may be brought when a claimant fails to obtain full compensation for the injuries. Rather, only when the injury falls outside of the ambit of the WCA should other action be available. *See, e.g., Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 905 P.2d 185 (1995) (stating that worker's

**600**

claim against his employer for intentional spoliation of evidence is not barred by WCA's exclusivity provisions); *Johnson Controls World Servs., Inc. v. Barnes,* 115 N.M. 116, 847 P.2d 761 (Ct.App.) (stating that on-the-job injuries rendered intentionally may fall outside WCA's exclusivity provision), *cert. denied,* 115 N.M. 79, 847 P.2d 313 (1993).

■ 17. Although Sabella's claims for workers' compensation and for violation of the NMHRA stem from the same set of facts, each statute remedies two very different types of injuries that Sabella claims to have suffered. In construing a statute, we look to the object the legislature sought to accomplish and the wrong it sought to remedy; the comprehensiveness or adequacy of the remedy provided is a factor to be considered in deciding whether a statute provides the exclusive remedies. *See Michaels v. Anglo–American Auto Auctions, Inc.,* 117 N.M. 91, 869 P.2d 279 (1994) (holding that a cause of action for retaliatory discharge was not barred by the WCA's exclusivity provision). The concerns addressed by the NMHRA are quite different from those addressed by the WCA. *See generally Cox v. Chino Mines/ Phelps Dodge,* 115 N.M. 335, 850 P.2d 1038 (Ct.App.1993). In *Cox,* plaintiff was denied workers' compensation benefits for sexual harassment suffered on the job. The workers' compensation judge found that plaintiff's particular episode of sexual harassment did not arise out of her employment. Our Court of Appeals affirmed on the basis that there was no evidence that either the nature of the job or the job environment created or enhanced the risk of assault. *Id.* at 338, 850 P.2d at 1041. The Court of Appeals also rejected the argument that, in furtherance of public policy, claims of sexual harassment on the job should be compensable under the WCA. The Court indicated it was more persuaded that such claims are properly pursued by the common-law or statutory remedies available, referring to the NMHRA. *Id.*

18. The NMHRA was enacted in 1969 to eliminate "unlawful discriminatory practice" based on "race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or medical condition." Section 28–

1–7(A); *Gandy v. Wal–Mart Stores, Inc.,* 117 N.M. 441, 442, 872 P.2d 859, 860 (1994). As one jurisdiction aptly stated, the law against discrimination "seeks to remedy an evil that 'threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.'" *Reese v. Sears, Roebuck & Co.,* 107 Wash.2d 563, 731 P.2d 497, 501 (1987) (quoting RCW 49.60.010), *overruled on other grounds by Phillips v. City of Seattle,* 111 Wash.2d 903, 766 P.2d 1099, 1103 (1989) (en banc). To that extent, the NMHRA has broad social, political, and economic implications. *Cf. id.*

19. On the other hand, the WCA was enacted as a response to the ever-increasing number of industrial injuries and the insufficient remedies available to injured workers. The WCA operates so that "employees who suffer disablement as a result of injuries causally connected to their work, shall not become dependent upon the welfare programs of the State but shall receive some portion of the wages they would have earned, had it not been for the intervening disability...." *Casias v. Zia Co.,* 93 N.M. 78, 80, 596 P.2d 521, 523 (Ct.App.) (citation omitted), *cert. denied,* 93 N.M. 8, 595 P.2d 1203 (1979). Further, by complying with the WCA, the employer is not subject to other claims that may arise from the same injury. *See Sanchez v. Hill Lines,* 123 F.Supp. 42, 44 (D.N.M.1954). Because each statute seeks to remedy distinct infirmities, an action under the NMHRA for sex discrimination cannot be barred by the WCA as a matter of course.

■ 20. We recognize that these statutory objectives may seem to overlap. Nonetheless, an action under the NMHRA for sex discrimination can proceed when the resulting injuries are not contemplated by the WCA. As one commentator explained, the distinction "cannot be derived solely from either the theoretical components of the tort or from the elements of damage. It must never be forgotten that the compensation act coverage language [includes] ... 'injury,' or 'personal injury,' or 'death.'" 2A Arthur Larson, *The Law of Workmen's Compensation* § 68.34(a), at 13–178 (1995). Thus, "[i]f the essence of the wrong ... is personal

injury or death, and if the usual conditions of coverage are satisfied, the action must be barred by the exclusiveness clause no matter what its name or technical form may be." *Id.* § 68.34(a), at 13–178 to –179. If the injury is the type for which the WCA provides a remedy, further action must be barred. It logically follows, then, that if the underlying injuries for which the plaintiff is suing are outside of the WCA, the action cannot be barred.

21. In the instant case, Sabella filed a claim under the WCA for the physical and psychological injuries that she suffered as a result of the sexual assault by her supervisor. Her workers' compensation settlement included amounts for medical treatment and for emotional trauma. In addition, Sabella filed a claim for violation of the NMHRA, asserting that Manor Care sexually discriminated against her by failing to take action against her supervisor and then retaliated against her when she reported Manor Care to the EEOC and the NMHRA. To proceed with her NMHRA claim, then, Sabella bears the burden of proving that her damages under the NMHRA are separate and distinct from those for which she has already been compensated in her workers' compensation settlement. *Montoya v. AKAL Sec., Inc.*, 114 N.M. 354, 357, 838 P.2d 971, 974 (1992) (stating that double recovery is prohibited as a matter of law).

22. The district court dismissed Sabella's claim on the basis that it was barred as a matter of law. It was not. Manor Care has argued in the alternative that she should be estopped from asserting any claim other than under the WCA. As we have interpreted the release and the WCA, she preserved an independent claim. However, on the facts of this case, the damage may overlap or coincide. The district judge will be able to determine on remand, better than we can on appeal, whether Sabella's apparently independent claims give rise to actually independent damages.

## V.

23. In conclusion, we hold that because the EEOC and the NMHRD had a work-sharing agreement under which the EEOC and the NMHRD act as the other's agent for purposes of filing claims, Sabella exhausted her administrative remedies before filing her claim in the district court. Further, we hold that under the alleged facts of this case, a claim of sex discrimination under the NMHRA is not barred by the WCA. Accordingly, we reverse and remand for proceedings in which Sabella must prove she suffered injuries for violation of the NMHRA that are distinct from those injuries for which she has been compensated in her workers' compensation settlement.

24. **IT IS SO ORDERED.**

FROST, C.J., and MINZNER, J., concur.