1997–NMCA–014

933 P.2d 867

**Wilburn Jackson REAGAN, Jr., Plaintiff,**

v.

**McGEE DRILLING CORPORATION, Defendant–Appellee,**

and

**McDonnold Operating, Inc., Defendant–Appellant.**

No. 17419.

Court of Appeals of New Mexico.

Jan. 16, 1997.

Certiorari Denied Feb. 17, 1997.

Larry D. Beall and Thomas L. Murphy, Beall & Biehler, P.A., Albuquerque, for Defendant–Appellant.

Michael T. Worley and Kelly Mack Cassels, Sanders, Bruin, Coll & Worley, P.A., Roswell, for Defendant–Appellee.

*OPINION*

PICKARD, Judge.

1. A Texas oil well operator, McDonnold Operating Company [Operator], contracted in Texas with a Texas driller, McGee Drilling Corporation [Driller], to drill an oil well in New Mexico. The contract declared that Texas law governed, and it called for Operator to indemnify Driller for injuries to all persons except Driller's employees. Such indemnity provisions, though void under New Mexico law, are valid under Texas Law in certain circumstances. Plaintiff, William Reagan [Plaintiff], another company's employee, was injured during the operation, apparently through Driller's negligence, and Driller sought indemnification from Operator. We must decide whether the indemnity provisions are so offensive to New Mexico public policy that we should not enforce them. We conclude that the indemnity provisions are enforceable under either our conflict of laws rules or the parties' own choice of law because they do not promote a policy at odds with New Mexico policy, nor do they violate some fundamental principle of justice or rule of public morals. We affirm.

*FACTS*

2. On August 17, 1994, Plaintiff, an employee of Halliburton Energy Services, was working on an oil rig in Lea County, New Mexico, when a stabbing board on which he was standing collapsed. Plaintiff fell to the floor of the rig and suffered injuries. The stabbing board belonged to Driller. Driller had control and custody of the defective stabbing board, and Operator did not.

3. Plaintiff sued Driller, Operator, and other defendants for injuries resulting from his fall. Driller and Operator cross-claimed for indemnity against each other. Driller based its claim on the indemnity provisions in its drilling contract with Operator; Operator based its claim on a common law theory of indemnification. Plaintiff settled with all defendants, and the only remaining issue is the indemnity cross-claims between Driller and Operator.

4. The parties, both Texas corporations, negotiated and signed the drilling contract in Midland, Texas. The contract contained mutual indemnity provisions. The indemnity provisions of the contract applicable to this case stated:

**18.11 Operator's Indemnification of Contractors:** Operator agrees to protect, defend, indemnify, and save Contractor [Driller], its officers, directors, employees and joint owners harmless from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Operator's employees or Operator's contractors or their employees or Operator's invitees other than those parties identified in Paragraph 18.10 [in which Driller agreed to indemnify Operator for the claims of Driller's employees] on account of bodily injury, death or damage to property. Operator's Indemnity shall be without regard to and without any right to contribution from any insurance maintained by Contractor [Driller] pursuant to paragraph 16.

**18.15 Indemnity Obligation:** Except as otherwise expressly limited herein, it is the intent of parties hereto that all indemnity obligations and/or liabilities assumed by such parties under terms of this Contract, including without limitation, paragraphs 18.1 through 18.14 hereof, be without limit and without regard to the cause or causes thereof (including pre-existing conditions), the unseaworthiness of any vessel or vessels, strict liability, or the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive.

Section 23 of the contract declared that the contract should "be governed and interpreted under the laws of TEXAS."

5. The trial court found that: (1) Texas law should govern because New Mexico follows the law of the place of contract in resolving conflict of laws questions; (2) the parties intended Texas law to govern the contract by placing the choice of law provi-

sion in the contract; and (3) Operator was required to indemnify Driller pursuant to the contract for any negligence action "arising in connection herewith in favor of operator's employees or operator's contractors or their employees." Operator now appeals, and we affirm.

## DISCUSSION

6. Ordinarily, we would first need to decide which state's law to apply to a dispute between parties that is being litigated in a New Mexico forum, but that involves Texas parties and a Texas contract that stipulates Texas law as governing. The Restatement (First) of Conflict of Laws (1934) derived its rules from the vested rights doctrine and provided that issues of validity of contractual provisions were to be determined by the local law of the place of contracting. Restatement (Second) of Conflict of Laws, Intro. Note to Ch. 8, Contracts, p. 557 (1971). Noting that the vested rights doctrine had not prevailed in the courts, *id.*, the Restatement (Second) of Conflict of Laws adopts the rule that the law to be applied may be chosen by the parties and otherwise is determined by an interest analysis. Restatement (Second) of Conflict of Laws, §§ 186–188 (1971).

7. Our Courts have strongly endorsed the view that the rights of the parties to a contract are primarily determined by the terms of the contract. *United Wholesale Liquor Co. v. Brown–Forman Distillers Corp.*, 108 N.M. 467, 471, 775 P.2d 233, 237 (1989); *Jim v. CIT Fin. Servs. Corp.*, 87 N.M. 362, 364, 533 P.2d 751, 753 (1975); *General Elec. Credit Corp. v. Tidenberg*, 78 N.M. 59, 62, 428 P.2d 33, 36 (1967); *City of Artesia v. Carter*, 94 N.M. 311, 314, 610 P.2d 198, 201 (Ct.App.), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980). This strong endorsement may counsel that, if the issue were squarely presented, New Mexico would likely adopt the Restatement (Second) approach to choice of law under circumstances in which the parties had expressly chosen the law. In this connection, we note that prior cases rejecting the Restatement (Second) position have primarily involved a rejection of the interest analysis, rather than a rejection of the position that the parties to a contract should be entitled to choose the law applicable to that contract.

*See, e.g., Ratzlaff v. Seven Bar Flying Serv., Inc.*, 98 N.M. 159, 162, 646 P.2d 586, 589 (Ct.App.) ("New Mexico still adheres to traditional conflicts of law analysis, and has not adopted the ... approach which focuses on which state has the maximum interests in the litigation."), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982).

■ 8. We need not decide the issue in this case, however, because Texas law would be applied whether we followed the first or second Restatement. The formulations of what law is to be applied and what exceptions may apply is similar under either Restatement. When the conflict of laws rules lead to the law of a state whose law differs from that of the forum or when the parties have chosen a law different from the forum, the rule is that the forum may decline to apply the out-of-state law if it offends New Mexico public policy. *United Wholesale Liquor Co.*, 108 N.M. at 470, 471, 775 P.2d at 236, 237. Thus, the real issue in this case is whether New Mexico should decline to adopt Texas' law on policy grounds.

9. It is said that courts should invoke this public policy exception only in "extremely limited" circumstances. *Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 218 (10th Cir.1992); Restatement (First) of Conflict of Laws § 612 cmt. c (1934). Mere differences among state laws should not be enough to invoke the public policy exception. *See Shope v. State Farm Ins. Co.*, 122 N.M. 398, 925 P.2d 515 (N.M.Sup.Ct.1996) (holding that applying Virginia law of stacking to uninsured motorist contract did not violate any fundamental public policy of New Mexico and instead fulfilled contractual expectation of parties). Otherwise, since every law is an expression of a state's public policy, the forum law would always prevail unless the foreign law were identical, and the exception would swallow the rule. *See Tucker*, 956 F.2d at 218. The threshold, under Justice Cardozo's classic articulation, is whether giving effect to another state's policies would "violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal" of the forum state. *Loucks v. Standard Oil Co. of New York*, 224 N.Y. 99, 120 N.E. 198, 202 (1918).

Our Supreme Court appeared to move toward this standard in *United Wholesale Liquor Co.*, 108 N.M. at 471, 775 P.2d at 237.

10. This framework of the choice of laws rules, with its public policy exception, requires us to ask whether the indemnity clause in the contract at issue violates New Mexico public policy. NMSA 1978, Section 56–7–2 (Repl.Pamp.1996), New Mexico's anti-indemnity statute pertaining to oil well contracts, states:

A. Any agreement, covenant or promise contained in, collateral to or affecting any agreement pertaining to any well for oil, gas or water, or mine for any mineral, which purports to indemnify the indemnitee against loss or liability for damages, for:

(1) death or bodily injury to persons; or

(2) injury to property; or

(3) any other loss, damage or expense arising under either Paragraph (1) or (2) or both; or ,

(4) any combination of these, arising from the sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee or any independent contractor who is directly responsible to the indemnitee, or from any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee, *is against public policy and is void and unenforceable.* This provision shall not affect the validity of any insurance contract or any benefit conferred by the Workmen's Compensation Act [Chapter 52, Article 1 NMSA 1978].

(Emphasis added.) The policy behind this statute is to promote safety by giving both the operator and the subcontractor an incentive to know that each will be responsible for its own share of negligence. *Amoco Prod. Co. v. Action Well Serv., Inc.*, 107 N.M. 208, 211, 755 P.2d 52, 55 (1988). Thus, under New Mexico law, the provisions requiring Operator to indemnify Driller for any negli-gence action "arising in connection herewith in favor of operator's employees or Operator's contractors or their employees" would be void and unenforceable if New Mexico law were to apply.

11. Texas also has an oilfield anti-indemnity act, Tex.Civ.Prac. & Rem.Code Ann. §§ 127.001 to 127.008 (Vernon 1986), which declares certain indemnity agreements "void," § 127.003, and "against public policy," § 127.002. However, it permits indemnity agreements under certain circumstances. Under Texas law, there are two requirements indemnity agreements must meet to be valid. First, indemnity agreements must provide for insurance coverage under Section 127.005. Second, the parties must expressly contract in specific terms to indemnify the indemnitee's own negligence. *See Dupre v. Penrod Drilling Corp.*, 788 F.Supp. 901, 905 (E.D.La.1992), *aff'd*, 993 F.2d 474 (5th Cir. 1993), following *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708–09 (Tex. 1987) (adopting "express negligence" test). Operator concedes, and we agree, that the indemnity provision in the contract in this case is valid under Texas law despite Texas' anti-indemnity statutes because these two requirements are met.

12. Driller argues that the Texas policy behind its anti-indemnity statutes is the same as New Mexico's policy of promoting safety announced in *Amoco Prod. Co.*, 107 N.M. 208, 755 P.2d 52. It cites as authority *Getty Oil Co. v. Insurance Co. of North America*, 845 S.W.2d 794, 803 (Tex.1992), *cert. denied*, 510 U.S. 820, 114 S.Ct. 76, 126 L.Ed.2d 45 (1993). There, the Texas Supreme Court announced that one policy behind oilfield anti-indemnity statutes was to make each party responsible for its own actions and the actions of those under its control. *Id.* at 803. Even though the policies are similar, New Mexico has a stricter policy of not enforcing indemnity agreements such as the one here, and New Mexico makes no exception for agreements covered by insurance as Texas does. *See Amoco Prod. Co.*, 107 N.M. at 211, 755 P.2d at 55 (Section 56–7–2(A)(4) exception applies to insurance purchased by indemnitor to protect *its* interests, not indemnitee's).

13. Behind New Mexico's anti-indemnity statutes lies a policy of promoting safety by making sure responsible parties compensate plaintiffs injured in oilfields. *Amoco Prod. Co.*, 107 N.M. at 211, 755 P.2d at 55. Likewise, Texas' anti-indemnity statutes demonstrate a policy of requiring responsible parties to compensate oilfield injuries. *Getty Oil Co.*, 845 S.W.2d at 803–04. The policy goals of Texas and New Mexico are similar. Both intend to promote compensation for injuries and to promote safety by holding responsible those who cause the injury. Texas' exception for indemnity contracts covered by insurance is not at odds with this. We cannot say that it was Texas policy to promote, or ignore, dangerous oilfield practices by creating an exception for insurance. Such behavior would soon result in lost insurance coverage in any event in that insurers would be unlikely to renew policies of those entities showing little regard for safe practices. Texas' statutes are therefore simply another route to achieving a similar policy goal to New Mexico's. Thus, while a Texas indemnity contract covered by insurance is contrary to the letter of New Mexico law, it does not promote a policy at odds with New Mexico policy.

14. This analysis is not inconsistent with our Supreme Court's holding in *Amoco Prod. Co.* In that case, the indemnitee, Amoco Production Company, sought enforcement of an indemnity contract provision. 107 N.M. at 209, 755 P.2d at 53. Amoco asked our Supreme Court to adopt the Texas approach by reading Section 56–7–2(A)(4) as permitting indemnity contracts when covered by insurance. The Supreme Court refused to do this, saying, "The Texas statute, however, is not our statute, and it is not our duty to read the legislative enactments of New Mexico through the eyes of the legislature of Texas." *Amoco Prod. Co.*, 107 N.M. at 211, 755 P.2d at 55. However, *Amoco Production Co.* only establishes that the statutes of the two states are different, at least in this one respect. That case does not hold, or imply, ˙ that Texas law permitting indemnity where covered by insurance would violate some fundamental public policy of the State of New Mexico. *Amoco Production Co.* does not declare Texas indemnity law unenforceable in New Mexico.

15. New Mexico does have a strong public policy in favor of freedom to contract which requires enforcement of contracts unless "they clearly contravene some law or rule of public morals" or "violate some fundamental principle of justice." *United Wholesale Liquor Co.*, 108 N.M. at 471, 775 P.2d at 237. Simple differences in laws among states does not rise to this level. *Tucker,* 956 F.2d at 218.

16. In the present case, the indemnity provisions are valid under Texas law, whose public policy is consistent with New Mexico's. Furthermore, the indemnity provisions do not touch upon any rule of public morals. They do not rise to the level of violating "some fundamental principle of justice, some prevalent conception of good morals...." *Loucks,* 120 N.E. at 202. The parties negotiated and signed the contract in Texas. Both parties were free to choose Texas law to govern their contract, and under that law the provisions are valid. Our conflict of laws rules require us to recognize that law and enforce the contract.

*CONCLUSION*

17. We hold, therefore, that the indemnity provisions requiring Operator to indemnify Driller for Driller's own negligence are enforceable in New Mexico. Having decided that Operator must indemnify Driller according to the parties' agreement, we do not need to address Operator's cross-claim for common law indemnification from Driller.

18. We affirm.

19. **IT IS SO ORDERED.**

ALARID and BOSSON, JJ., concur.