The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: <u>February 28, 2024</u>

**No. A-1-CA-39928**

**PATSY TAVAREZ,**

 Plaintiff-Appellant,

v.

**AB STAFFING SOLUTIONS and AMY SANCHEZ, in her official and individual capacities,**

 Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nancy J. Franchini, District Court Judge**

Heather Burke
Santa Fe, NM

for Appellant

Wiggins, Williams & Wiggins,
A Professional Corporation
Lorna M. Wiggins
Albuquerque, NM

for Appellees

**OPINION**

**MEDINA, Judge.**

{1}     Plaintiff Patsy Tavarez appeals the grant of a motion to dismiss her claim for violations the New Mexico Human Rights Act (NMHRA), NMSA 1978, §§ 28-1-1 to -14 (1969, as amended through 2023), and the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2611 to -54. The district court granted the motion to dismiss in favor of Defendant AB Staffing Solutions because Plaintiff signed an employment agreement that designated Arizona as the proper forum and source of law for all employment-related disputes, and because Plaintiff did not meet her burden of showing the employment agreement was invalid. On appeal, Plaintiff challenges the forum selection and choice-of-law provisions, arguing that the Arizona Civil Rights Act (ACRA), Ariz. Rev. Stat. Ann. §§ 41-1401 to -1492.12 (1965, as amended through 2022), does not provide the same protections as the NMHRA; that she could not have exhausted her administrative remedies in Arizona; and that the forum selection clause violated public policy. Although it would be unfair to deprive Plaintiff of the exceptionally important remedy enshrined in the NMHRA, Plaintiff could have sought equivalent relief in Arizona. We therefore affirm.

**BACKGROUND**

{2}     Plaintiff and Defendant entered into an employment agreement that contained choice-of-law and forum selection provisions. Although Plaintiff worked for

Defendant in New Mexico, the choice-of-law provision required the agreement to be "exclusively interpreted, governed and enforced in accordance with the internal substantive laws of the State of Arizona." The forum selection clause stated, "The [Plaintiff] and [Defendant] agree that the Superior Court of the State of Arizona, in and for the County of Maricopa ("Maricopa County Superior Court"), shall possess exclusive jurisdiction over any and all disputes, controversies and factual and legal issues that in any way arise from or relate to this [a]greement."

{3} Upon her termination, Plaintiff alleged Defendant discriminated against her because she had cancer—she consequently filed a claim with New Mexico Human Rights Bureau (NMHRB) asserting violations of the NMHRA, the FMLA, and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 to -213. The NMHRB issued a determination of no probable cause approximately one year later, and Plaintiff appealed to the district court.

{4} Defendant filed a motion to dismiss arguing that the forum selection and choice-of-law provisions in the employment agreement prevented the district court from exercising jurisdiction over the appeal. The district court granted the motion to dismiss because Plaintiff failed to show the forum selection clause was invalid or unconscionable, and had otherwise failed to explain why she could not pursue relief under Arizona law. Plaintiff appealed in New Mexico.

**DISCUSSION**

{5}     This case requires us to review the enforceability of the forum selection and choice-of-law clauses in question. Plaintiff alleges that she could not have obtained relief in Arizona because she would not have the same rights provided in the NMHRA, she could not have exhausted her administrative remedies in Arizona, and because these clauses violated public policy. "We review the interpretation of any relevant contract terms de novo." *State ex rel. Balderas v. ITT Educ. Servs., Inc.*, 2018-NMCA-044, ¶ 8, 421 P.3d 849. "[W]hether a contract is against public policy is a question of law for the court to determine from all the circumstances of each case, considering both statutory and judicial expressions of public policy." *Id.* (internal quotation marks and citation omitted). We review questions of law de novo. *Id.*

{6}     "A contractual forum selection clause is prima facie valid and should be enforced unless unreasonable under the circumstances." *Mueller v. Sample*, 2004-NMCA-075, ¶ 8, 135 N.M. 748, 93 P.3d 769. Similarly, "when application of the law chosen by the parties offends New Mexico public policy, our courts may decline to enforce the choice-of-law provision and apply New Mexico law instead." *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 7, 144 N.M. 464, 188 P.3d 1215. Although we have not explicitly adopted the Restatement (Second) of Conflict of Laws (1971) to address this issue, we have previously determined that "New Mexico

would likely adopt the Restatement (Second) approach to choice of law under circumstances in which the parties had expressly chosen the law," as occurred here. *See Reagan v. McGee Drilling Corp.*, 1997-NMCA-014, ¶ 7, 123 N.M. 68, 933 P.2d 867. In *Reagan*, this Court determined that we would likely apply the Restatement (Second) of Conflict of Laws because "[o]ur Courts have strongly endorsed the view that the rights of the parties to a contract are primarily determined by the terms of the contract." *Id.*

{7}     We agree that our courts have a strong preference for enforcing the terms of contracts, just as the Restatement (Second) of Conflict of Laws advises. *See, e.g., Jim v. CIT Fin. Servs. Corp.*, 1975-NMSC-019, ¶ 6, 87 N.M. 362, 533 P.2d 751 ("It is fundamental that a valid contract between parties governs their rights and duties."). *See also* Restatement (Second) of Conflict of Laws § 187(1) (1971) ("The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."). However, in addition to New Mexico's "strong policy of freedom to contract that requires enforcement of contracts," our courts will invalidate contractual terms if they "clearly contravene some law or rule of public morals." *Berlangieri v. Running Elk Corp.*, 2003-NMSC-024, ¶ 20, 134 N.M. 341, 76 P.3d 1098 (internal quotation marks and citation omitted). *See also Acacia Mut. Life Ins. Co. v. Am. Gen. Life Ins.*

4

*Co.*, 1990-NMSC-107, ¶ 1, 111 N.M. 106, 802 P.2d 11 ("The right to contract is jealously guarded by [the C]ourt, but if a contractual clause clearly contravenes a positive rule of law, it cannot be enforced."). The Restatement (Second) of Conflict of Laws also endorses this approach in analyzing forum selection issues, and provides appropriate guidance to resolve the case before us.

{8}    Under the Restatement (Second) of Conflict of Laws § 80 cmt. c., "[a] court will either stay or dismiss an action brought in violation of a choice-of-forum provision unless it would be *unfair or unreasonable* to do so." (Emphasis added.) Although courts typically enforce choice-of-law and forum selection provisions, the Restatement (Second) of Conflict of Laws § 80 cmt. c. advises that a court will disregard those provisions "if it finds that for some reason the courts of the chosen state would be closed to the suit." *Cf. Fiser*, 2008-NMSC-046, ¶ 15 (declining to enforce a contractual clause forbidding class action suit in New Mexico because "a prohibition on class relief where there is no meaningful alternative for redress of injury certainly does not provide for effective vindication of rights").

{9}    Thus, New Mexico courts may decline to enforce contractual clauses that violate public policy or prevent meaningful redress of injury. *Id.* ¶¶ 7, 15. Here, Plaintiff takes a slightly different tack and primarily argues that the private contract she signed improperly conferred subject matter jurisdiction over claims under the NMHRA to Arizona state courts. Plaintiff claims the New Mexico Legislature

granted local district courts exclusive subject-matter jurisdiction over NMHRA claims, thereby precluding suit in a foreign venue. Contrary to Plaintiff's admittedly unpreserved argument, however, the employment agreement in question did not require the Arizona courts to oversee her claims under the NMHRA. Rather, the forum selection and choice-of-law provisions required Plaintiff to pursue any legal dispute with her employer in Arizona under Arizona state law. This begs the first question we must address—does a contract that deprives a New Mexican resident of the ability to file a claim under the NMHRA violate public policy?

{10}    "The strongest indicators of a state's public policies appear in legislative declarations." *Vigil v. Arzola*, 1983-NMCA-082, ¶ 29, 102 N.M. 682, 699 P.2d 613 (noting that the NMHRA falls into a category of "legislation which not only defines public policy, but also provides a remedy"). "[O]ur primary goal is to give effect to the Legislature's intent." *Berlangieri*, 2003-NMSC-024, ¶ 42. The NMHRA specifically outlines the comprehensive process through which a person may allege discrimination and seek redress. *See Gandy v. Wal-Mart Stores, Inc.*, 1994-NMSC-040, ¶ 5, 117 N.M. 441, 872 P.2d 859 ("The [NMHRA] was enacted in 1969, to eliminate unlawful discriminatory practices, and to create a comprehensive administrative scheme to facilitate adjudication of claims of discrimination." (alteration, internal quotation marks, and citations omitted)). "When electing to

proceed with a complaint under state law, a person is bound by the NMHRA." *Rist v. Design Ctr. at Floor Concepts*, 2013-NMCA-109, ¶ 9, 314 P.3d 681.

{11} Our courts have repeatedly emphasized the importance of the policies outlined in the NMHRA. *See, e.g.*, *Sabella v. Manor Care, Inc.*, 1996-NMSC-014, ¶ 18, 121 N.M. 596, 915 P.2d 901 ("[T]he law against discrimination seeks to remedy an evil that threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." (internal quotation marks and citation omitted)). "[T]he NMHRA has broad social, political, and economic implications." *Id.* The overarching purpose of the NMHRA is "to promote the equal rights of people within certain specified classes by protecting them against discriminatory treatment." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 13, 309 P.3d 53. The mission of eliminating discrimination and promoting equal rights has been called "exceptionally important public policy." *Rodriguez v. N.M. Dep't of Workforce Sols.*, 2012-NMCA-059, ¶ 16, 278 P.3d 1047. We conclude that forum selection or choice-of-law provisions that negate the rights guaranteed by the NMHRA would run contrary to the strong public policy outlined therein.

{12} That being said, this Court has previously declined to invalidate forum selection clauses where a foreign law is not in conflict with the parties' chosen law. *See Reagan*, 1997-NMCA-014, ¶ 13. *Cf. Fiser*, 2008-NMSC-046, ¶ 7 ("New Mexico respects party autonomy; the law to be applied to a particular dispute may

be chosen by the parties through a contractual choice-of-law provision."). If Plaintiff could have pursued a claim in Arizona to vindicate the same rights that are protected by New Mexico law, we would not invalidate the forum selection and choice-of-law provisions at issue here. As such, we must determine whether the ACRA conflicts with the NMHRA in such a way that would have precluded Plaintiff's claims.[1]

{13}     Plaintiff argues that she could not have obtained relief in Arizona because the ACRA does not provide the same protections as the NMHRA. Like the NMHRA, the ACRA does protect against disability discrimination—which Plaintiff initially alleged based upon Defendant's conduct following her diagnosis of cancer. *See* Ariz. Rev. Stat. Ann. § 41-1463(B)(1) (making unlawful discrimination based on disability). The ACRA defines "[d]isability" as "[a] physical or mental impairment that substantially limits one or more of the major life activities of the individual," "[a] record of such a physical or mental impairment[,]" or "[b]eing regarded as

---

[1]The Legislature may take note that other jurisdictions have adopted statutory "anti-waiver" provisions that prevent a person from waiving specific rights that a state deems inalienable. "An anti-waiver statute is a statute which states that the rights conferred by a given law cannot be waived." John F. Coyle & Katherine C. Richardson, *Enforcing Outbound Forum Selection Clauses in State Court*, 96 Ind. L.J. 1089, 1114 (2021). *See, e.g.*, *Maher & Assocs., Inc. v. Quality Cabinets*, 640 N.E.2d 1000 (Ill. App. Ct. 1994) ("The only reasonable interpretation of section 2 of the Sales Act is that the [L]egislature was announcing fundamental public policy when it decided that any contract purporting to waive any provisions of the Act is void. Therefore, we void the forum-selection clause of the agreement in this matter." (citing 820 Ill. Comp. Stat. Ann. 120/2 (West 2023) ("Any provision in any contract between a sales representative and principal purporting to waive any of the provisions of this Act shall be void."))).

having such a physical or mental impairment." Ariz. Rev. Stat. Ann. § 41-1461(5). Arizona state courts have specifically held that cancer, or a history thereof, qualifies as a disability under the ACRA. *See Burris v. City of Phoenix*, 875 P.2d 1340, (Ariz. Ct. App. 1993) ("There is sufficient evidence to conclude that cancer is a handicap covered by [Ariz. Rev. Stat. Ann. Section] 41-1463(B)(1)."). Consequently, we discern no conflict between the ACRA and the NMHRA in this instance.[2]

{14}    Plaintiff also argues it was impossible for her to pursue her claims in Arizona because she could not exhaust her administrative remedies with the Arizona Civil Rights Division (ACRD) before pursuing a legal remedy in an Arizona state court. However, the ACRA and the associated administrative code, Arizona Admin. Code §§ R10-3-100 to -209 (1977) do not prohibit the ACRD from investigating a claim involving conduct that occurred in another state. *See also* Ariz. Admin.

---

[2]Although Plaintiff likely could have pursued a claim in Arizona based on the discrimination she is alleged to have suffered, the NMHRA does appear to provide broader protections than the ACRA in other instances. For example, the NMHRA protects against discrimination based on sexual orientation and gender identity, § 28-1-7(A), while the ACRA may not. *See Bruer v. State ex rel. Bronovich*, 2021 WL 4998467, at *1 (Ariz. Ct. App. Oct. 28, 2021), *review denied* (Mar. 1, 2022) ("[T]he [ACRD] informed [the plaintiff] it did not have jurisdiction to process her allegations because sex discrimination under the [ACRA] did not include discrimination based on sexual orientation or gender identity."). A conflict of law that deprives a New Mexican their statutorily-guaranteed protections would serve as grounds to invalidate a forum selection or choice-of-law clause. *See* Coyle, *supra*, at 1117 ("[C]ourts will generally refuse to enforce forum selection clauses if they believe that enforcement will ultimately result in the waiver of rights conferred by this statute.").

Code § R10-3-109(A) (1977) ("The [ACRD] does not intend that a failure to comply with these rules should constitute a jurisdictional or other bar to administrative or legal action unless otherwise required by statute."). As such, we believe Plaintiff could have initially filed and pursued her complaint against Defendant with the ACRD before pursuing a claim in Arizona state court, as contemplated by the employment agreement.[3]

{15}   Ultimately, no conflict existed between the human rights laws that would have protected Plaintiff in New Mexico and Arizona, and we have found no indication that Plaintiff would have otherwise been barred from pursuing a human rights claim in the chosen forum. We therefore enforce the forum selection and choice-of-law provisions at bar. *See Mueller*, 2004-NMCA-075, ¶ 8, *Fiser*, 2008-NMSC-046, ¶ 7.

**CONCLUSION**[4]

{16}   For the foregoing reasons, we affirm.

---

[3]Plaintiff's date of termination was November 2, 2018, and as such she had until May 1, 2019, to file a charge in Arizona. *See* Ariz. Rev. Stat. Ann. § 41-1481(A) (stating that a charge must be filed within one hundred and eighty days from the date of the alleged discriminator act). Plaintiff did not file her charge in New Mexico until May 24, 2019, after the time for filing a charge in Arizona expired.

[4]To the extent this opinion conflicts with our holding in *Hammer v. AB Staffing Sols., LLC*, A-1-CA-37813, mem. op. (N.M. Ct. App. Oct. 2, 2019) (nonprecedential), we note that *Hammer* relied on NMSA 1978, Section 55-1-301(A) (2005) for the proposition that "[p]arties to a contract may agree to designate the appropriate forum to resolve any disputes." *Hammer*, A-1-CA-37813, mem. op. ¶ 4. Section 55-1-301 governs sales-of-goods contracts under the Uniform Commercial Code and is not applicable under the facts of this case.

{17}    **IT IS SO ORDERED.**

_____
**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

_____
**SHAMMARA H. HENDERSON, Judge**

_____
**KATHERINE A. WRAY, Judge**