1999-NMSC-025

980 P.2d 65

**Mary Ann MITCHELL–CARR, Mildred Smith, Robert Vaughan, and Bernardino Herrera a/k/a Bernie Herrera, Plaintiffs–Appellants,**

v.

**William McLENDON and Office and Professional Employees International Union Local 251, Defendants–Appellees.**

No. 23845.

Supreme Court of New Mexico.

May 3, 1999.

Rhodes & Salmon, P.C., Mark M. Rhodes, Hazen H. Hammel, Albuquerque, for Appellants.

Youngdahl, Sadin & Morgan, L.L.P., James M. Piotrowski, Albuquerque, for Appellees.

## OPINION

MINZNER, Chief Justice.

{1} Appellants Mary Ann Mitchell–Carr, Mildred Smith, Robert Vaughan, and Bernardino Herrera are former officers and members of the Office and Professional Employees International Union. Appellants filed a complaint in the district court alleging that the Union and its president, William McLendon, discriminated against them in violation of the New Mexico Human Rights Act (NMHRA), NMSA 1978, §§ 28–1–1 to –7, 28–1–9 to–14 (1969, as amended through 1995). The complaint also asserted allegations of prima facie tort against McLendon. In response to motions by Appellees McLendon and the Union, the district court issued an order granting summary judgment to McLendon on all claims against him, and another order granting summary judgment to the Union on the NMHRA claims of Mitchell–Carr, Smith, and Vaughan. In addition, the district court denied Appellants' motion to disqualify their opposing counsel, quashed a subpoena directed to a member of opposing counsel's firm, and issued a protective order relating to that member of the firm.

{2} Mitchell–Carr, Smith, and Vaughan appeal from the district court's order granting summary judgment to McLendon and the Union on the NMHRA claims. Herrera appeals from the order granting summary judgment to McLendon on the NMHRA claims. All Appellants appeal from the order granting summary judgment to McLendon on the prima facie tort claims, and from the orders relating to disqualification and discovery. This Court has jurisdiction to hear the appeal under Section 28–1–13(C). For the reasons stated below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

{3} With respect to the NMHRA claims against McLendon, we conclude that the district court properly granted summary judgment because Appellants failed to name McLendon as an individual respondent in the complaints they filed with the Equal Employment Opportunity Commission (EEOC). With respect to the NMHRA claims against the Union, we conclude that the district court's grant of summary judgment was reversible error because the notices of right to sue issued by the EEOC were not sufficient to trigger the statutory time limit for filing an appeal in the district court and Appellants exhausted their administrative remedies by obtaining orders of nondetermination from the New Mexico Human Rights Division. We conclude that the district court's order granting summary judgment on Appellants' prima facie tort claims was a partial summary judgment because McLendon's summary judgment motion did not address all of the allegations in the complaint. Finally, we conclude that the district court did not abuse its discretion in ruling on the parties' motions relating to discovery and disqualification of opposing counsel.

I.

{4} Appellants' claims are based on allegations that, while serving as Union officials, Smith and Vaughan discovered a letter addressed to Smith, which Smith had never seen. The letter indicated that the Union's international had transmitted a check to settle a lawsuit. Smith later learned that the check had been transferred to Jay Thomas Youngdahl, the Union's attorney in that lawsuit. The discovery of this letter led to conflict within the Union about the propriety of transferring the check to Youngdahl. This conflict escalated to Union action against Appellants, to charges against the Union involving the National Labor Relations Board (NLRB) and the EEOC, and finally to the district court complaint that is the basis of this appeal.

{5} Pursuant to a charge of unfair labor practices by Mitchell–Carr and Smith, the NLRB filed a complaint against the Union for violations of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169 (1994). An administrative law judge (ALJ) dismissed the NLRB's complaint for lack of subject matter jurisdiction. The ALJ's decision was appealed to the NLRB, Region 28, in Washington, D.C. The disposition of that appeal is not in the record.

{6} All four Appellants filed charges of discrimination with the EEOC under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1994). The EEOC issued a notice of right to sue to Mitchell–Carr on May 13, 1994, to Smith on June 16, 1994, to Vaughan on June 28, 1994, and to Herrera on July 22, 1994. Appellants filed their Complaint in district court on August 12, 1994.

{7} The Union and McLendon initially responded to the district court complaint by filing a motion to dismiss in which they alleged, among other things, that Appellants had failed to file their grievances with the Division. At a hearing on December 8, 1994, the district court took the motion under advisement and allowed Appellants thirty days to supplement the record with documentation from the Division to show that their administrative remedies had been exhausted. While the motion was under advisement, Appellants obtained four orders of nondetermination from the Division. Appellants filed a notice of appeal from those orders in the district court on December 16, 1994. The district court later entered an order denying the motion to dismiss.

{8} On October 6, 1994, Appellants moved to disqualify opposing counsel, as well as opposing counsel's entire firm, because Youngdahl was a member of that firm. The district court denied the motion but advised Appellants that their motion would be reconsidered if they developed sufficient evidence to demonstrate that opposing counsel should be disqualified. Subsequently, Appellants issued Youngdahl a subpoena and attempted to depose him. The Union and McLendon responded with a motion for a protective order in which they asked the district court to quash the subpoena and impose sanctions. The district court granted the motion for a protective order, quashed the subpoena, and took the issue of sanctions under advisement.

{9} At the close of discovery, the Union moved for summary judgment on the NMHRA claims filed by Mitchell–Carr, Smith, and Vaughan on the ground that these Appellants did not file their complaint in district court within the statutory time limit. McLendon also moved for summary judgment on these grounds. In addition, McLendon's summary judgment motion called for dismissal of all Appellants' claims on the grounds that they failed to name McLendon as an individual respondent in the complaints they filed with the EEOC, and that their prima facie tort claims were preempted by federal law. The district court granted the Union summary judgment with respect to the NMHRA claims of Mitchell–Carr, Smith, and Vaughan, including in its order a determination that there was "no just reason for delay." The district court also granted McLendon summary judgment against all Appellants with respect to both their NMHRA claims and their prima facie tort claims, again stating in its order that there was "no just reason for delay." Both orders are final for purposes of appeal. *See* Rule 1–054(C)(1), (2) NMRA 1999.

## II.

{10} In order to invoke the grievance procedure provided in the NMHRA, Appellants were required to file a complaint with the Division within 180 days after the unlawful acts occurred. Section 28–1–10(A). They did not file a complaint against McLendon within this period. The record contains copies of the charges on which Appellants relied to show compliance with Section 28–1–10(A). None of the Appellants named McLendon as an individual respondent in these charges; each named only the Union as a respondent. Therefore, we conclude that the district court property granted summary judgment on Appellants' NMHRA claims against McLendon. *See Luboyeski v. Hill*, 117 N.M. 380, 382, 872 P.2d 353, 355 (1994) ("[I]ndividual defendants cannot be sued in district court under the [NMHRA] unless and until the complainant exhausts [his or] her administrative remedies against them.").

{11} We next examine the district court's order granting the Union partial summary judgment. The district court dismissed the NMHRA claims of Mitchell–Carr, Smith, and Vaughan on the grounds that these Appellants did not file their complaint in district court within thirty days of receiving notice of their right to sue from the EEOC. We determine that the EEOC notices were not sufficient to trigger the thirty-day time limit for appealing an administrative order under Section 28–1–13(A). Therefore, we conclude that the district court erred in granting the Union partial summary judgment.

{12} In ruling that Mitchell–Carr, Smith, and Vaughan did not file their complaint against the Union within the thirty-day time limit of Section 28–1–13(A), the district court relied upon *Sabella v. Manor Care, Inc.,* 1996–NMSC–014, 121 N.M. 596, 915 P.2d 901, which recognized that certain state administrative procedures may be satisfied by complying with comparable procedures under federal law. We conclude, however, that our holding in *Sabella* is limited to the initial processing of claims under the terms of the work-sharing agreement between the EEOC and the Division. Thus, receiving a notice of right to sue from the EEOC does not satisfy the state law requirement of obtaining an order from the Division, nor does such an EEOC notice affect the statutory time limit for filing an appeal from an order of the Division in state court.

{13} The record contains a copy of the work-sharing agreement between the EEOC and the Division. The agreement provides that the EEOC and the Division "each designate the other as its agent for the purpose of receiving and drafting charges." The agreement also provides for "dual filed charges." Thus, the agreement contemplates that a person will be allowed to use federal EEOC procedures to set in motion the grievance procedures of the NMHRA to the limited extent that, if he or she initially files a complaint with the EEOC, that complaint will be deemed to have been properly filed with the Division as well.

{14} Our holding in *Sabella*, 1996–NMSC–014, ¶ 12, 121 N.M. 596, 915 P.2d 901, emphasized the limited extent of the work-sharing agreement: "[T]he EEOC is an agent of the [Division] for purposes of filing charges of discrimination pursuant to the NMHRA.... Sabella timely filed a claim with the EEOC. Hence, she is deemed to have properly filed her complaint with the [Division]." Nothing in that opinion indicated that an EEOC notice would be deemed an order of nondetermination under Section 28–1–10(D), or that an EEOC notice would affect the time limits for filing an appeal in the district court under Section 28–1–13(A). On the contrary, we concluded that:

> Upon meeting the filing requirements, Sabella could then proceed with her grievance through either the EEOC or the [Division]. She elected to pursue her claim through the [Division]. Sabella then requested and received an order of nondetermination from the [Division] pursuant to Section 28–1–10(D). Having complied with the [Division's] grievance procedures, ... Sabella could then appeal to the district court for a trial de novo [under] Section 28–1–13(A).

*Sabella*, 1996–NMSC–014, ¶ 13, 121 N.M. 596, 915 P.2d 901.

{15} Our conclusion that the work-sharing agreement contemplates dual filed charges, but not a shared resolution of those charges by the EEOC and the Division, follows from significant differences in administrative authority under federal and state law. Under Title VII of the Civil Rights Act of 1964, the EEOC is directed to determine reasonable cause and attempt conciliation, but is not authorized to conduct a hearing or to order remedial measures. Instead, the EEOC refers such matters to the United States Attorney General, who may file a civil action in court. *See* 42 U.S.C. § 2000e–5(b), (f). In contrast, the NMHRA establishes a procedure by which the Division determines if probable cause exists, "attempt[s] to achieve a satisfactory adjustment of the complaint through persuasion and conciliation," Section 28–1–10(C), and, if necessary, conducts a hearing on the merits, Section 28–1–10(F). Thus, while both the EEOC and the Division have the authority to receive and investigate complaints about unlawful discrimination, only the Division has the additional authority to conduct hearings with respect to such complaints. It follows that only the Division, with its additional authority, may issue orders that satisfy the requirements of Sections 28–1–10(D) and 28–1–13(A).

{16} Once a person has elected to proceed with his or her complaint under state law, the NMHRA controls the grievance procedures for resolving that complaint. *See* § 28–1–10; *see also Jaramillo v. J.C. Penney Co.*, 102 N.M. 272, 272, 694 P.2d 528, 528 (Ct.App.1985) ("Looking to the general scheme of the [NMHRA,] it can be seen that the [NMHRA] provides the right, the procedure, and the remedy."). While the EEOC notices explained that Appellants had ninety days to file their complaints in court, that ninety-day period pertained to a grievance procedure that applies when a person chooses to proceed under federal law. *See* 42 U.S.C. § 2000e–5(f)(1). Under the NMHRA, on the other hand, a person can only appeal from an order of the Division, and he or she has only thirty days to file an appeal from that order in state court. *See* § 28–1–13(A). Section 28–1–10(D) of the NMHRA contemplates that, 180 days after the Division's receipt of a complaint, the person who filed the complaint may request, and shall receive, an order of nondetermination, which he or she may appeal to the district court for a trial de novo under Section 28–1–13(A). An order of nondetermination signals that the person who filed the complaint has fully complied with the NMHRA grievance procedures and may proceed to court. *See* Section 28–1–13(A).

{17} This Court and the Court of Appeals have consistently held that "full compliance with NMHRA grievance procedures [is] a prerequisite to filing [an NMHRA] claim in district court." *Sabella*, 1996–NMSC–014, ¶ 9, 121 N.M. 596, 915 P.2d 901; *accord Luboyeski*, 117 N.M. at 382, 872 P.2d at 355; *Jaramillo*, 102 N.M. at 273, 694 P.2d at 529. Under these authorities, the timely filing of a notice of appeal from an NMHRA administrative order is "effective to give the district court jurisdiction to try the case de novo" under Section 28–1–13. *Linton v. Farmington Mun. Schs.*, 86 N.M. 748, 750, 527 P.2d 789, 791 (1974); *cf. Sabella*, 1996–NMSC–014, ¶¶ 12–13, 121 N.M. 596, 915 P.2d 901 (allowing a person to maintain her NMHRA claim in district court based on the fact that she had requested and received an order of nondetermination from the Division). On the other hand, the district court must dismiss an NMHRA claim if the prerequisites of obtaining an order from the Division and appealing that order within thirty days are not satisfied. *Cf. Jaramillo*, 102 N.M. at 273, 694 P.2d at 529 ("[Because] the administrative procedure was never invoked[,][t]he district court action was not an appeal under Section 28–1–13.").

{18} In this case, the EEOC notices received by Appellants did not satisfy the first of these prerequisites because they were not orders from the Division. While Appellants were deemed to have properly filed their administrative complaints with the Division when they timely filed such complaints with the EEOC, *see Sabella*, 1996–NMSC–014, ¶ 12, 121 N.M. 596, 915 P.2d 901, meeting the filing requirements in this manner only means that Appellants "could then proceed with [their] grievance[s] through *either* the EEOC *or* the [Division]," *id.* ¶ 13 (emphasis

added). It does not mean that the EEOC notices could be treated as orders of nondetermination from the Division.

{19} Because the EEOC notices were not orders from the Division within the meaning of Section 28–1–13(A), the EEOC notices could not trigger the thirty-day time limit for appealing an order from the Division under that section. Thus, the fact that Mitchell-Carr, Smith, and Vaughan did not file their complaint in court within thirty days of their receipt of the EEOC notices is not dispositive. Because the district court mistakenly relied on this fact as the basis for its decision to grant summary judgment in the Union's favor, we cannot affirm the district court's decision on the grounds relied upon below.

■ {20} We next examine whether we may affirm the district court's ruling based on alternative grounds upon which the district court did not rely. *See State v. Torres,* 1999–NMSC–010, ¶ 22, —— N.M. ——, 976 P.2d 20 ("[W]e may affirm on grounds upon which the trial court did not rely unless those grounds depend on facts that [Appellants] did not have a fair opportunity to address in the proceedings below."). In this regard, we note that in addition to relying upon the EEOC notices to calculate the expiration of the statutory time limit for filing an appeal, the district court also appears to have relied upon the EEOC notices as the basis for its conclusion that Appellants exhausted their administrative remedies under the NMHRA. The district court's reliance on the EEOC notices was mistaken in both instances. Because the EEOC notices are not orders from the Division, they cannot serve to exhaust Appellants' administrative remedies any more than they can serve to trigger the statutory time limit for filing an appeal under Section 28–1–13(A). As noted above, the exhaustion of administrative remedies is a prerequisite to suit under the NMHRA, *see Luboyeski,* 117 N.M. at 382, 872 P.2d at 355, and a failure to exhaust administrative remedies may mean that the district court lacks subject-matter jurisdiction, *see Angel Fire Corp. v. C.S. Cattle Co. (In re Angel Fire Corp.),* 96 N.M. 651, 652, 634 P.2d 202, 203 (1981) ("Jurisdiction of the matters in dispute does not lie in the courts until the statutorily required administrative procedures are fully complied with.");. *cf.* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 195 (1990 & Supp. 1998) ("[A] motion [to dismiss for lack of subject matter jurisdiction] may be appropriate when [the] plaintiff has failed to exhaust administrative remedies that are a prerequisite to his [or her] suit....").

■ {21} In this case, however, Appellants contend that the orders of nondetermination they obtained from the Division after filing their district court complaint are sufficient to exhaust their administrative remedies notwithstanding any error regarding the EEOC notices. We agree. Before granting the Union's motion for partial summary judgment on the NMHRA claims, the district court denied a motion to dismiss that alleged a failure by Appellants to exhaust their administrative remedies. The denial of this motion to dismiss was based on the fact that Appellants obtained orders of nondetermination from the Division and timely filed a notice of appeal from those orders while the motion to dismiss was under advisement.

{22} We do not find error in the district court's decision to deny the motion to dismiss on this basis. A dismissal for lack of subject matter jurisdiction generally is without prejudice. *See* Rule 1–041(B) NMRA 1999 (listing "dismissal for lack of jurisdiction" as an exception to the general rule that involuntary dismissal "operates as an adjudication upon the merits"); Restatement (Second) of Judgments § 20(1)(a) (1980) (similar); 5A Wright & Miller, *supra,* § 1350, at 225 (similar). Thus, it is not uncommon for courts to allow jurisdictional defects to be cured by granting leave to amend the complaint, or to postpone ruling on a jurisdictional issue until the parties have had the opportunity to conduct discovery and present evidence on that issue. *Cf.* 27A *Federal Procedure* § 62:476, at 244 (Russell J. Davis et al. eds., 1996) ("[U]nless the [jurisdictional] defect ... is clearly incurable, the court should grant the plaintiff leave to amend, should allow the parties to argue the jurisdictional issue, or should provide the plaintiff with an opportunity to discover facts necessary to establish jurisdiction."). In this case,

the district court engaged in this common practice by postponing its ruling on the motion to dismiss until Appellants had been afforded the opportunity to obtain orders of nondetermination from the Division and to timely file a notice of appeal from those orders.

{23} Although the district court later questioned the validity of the orders of nondetermination when explaining its decision to grant the Union's motion for partial summary judgment, this later explanation by the district court was based on the mistaken conclusion that the EEOC notices served to exhaust Appellants' administrative remedies before the orders of nondetermination were issued. Since the EEOC notices did not serve to exhaust Appellants' administrative remedies, they could not have invalidated the orders of nondetermination in the manner suggested by the district court in its decision to grant the Union's motion for partial summary judgment.

{24} For the first time on appeal, the Union suggests another basis for invalidating the orders of nondetermination by claiming that Section 28–1–10(G) of the NMHRA imposes a one-year time limit for obtaining such orders from the Division. In this case, Appellants did not receive their orders of nondetermination from the Division within one year after they filed their administrative complaints with the EEOC. Because the Union did not assert any claim to a timely determination by the Division under Section 28–1–10(G) in the district court or in any administrative forum, however, we will only address this claim as a suggestion that the district court lacked subject matter jurisdiction. *Cf. Wilson v. Denver,* 1998–NMSC–016, ¶ 8, 125 N.M. 308, 961 P.2d 153 (noting that the question of subject matter jurisdiction may be raised at any stage of the proceedings). *But cf. State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App. 1994) ("[W]e will not [affirm on a ground not relied upon by the district court] if reliance on the new ground would be unfair to the appellant.").

{25} According to the Union, Appellants are barred from obtaining and appealing an order of nondetermination more than one year after filing their administrative complaints with the EEOC because Section 28–1–10(G) of the NMHRA states that:

Within one year of the filing of a complaint by a person aggrieved, the [Division] shall:

(1) dismiss the complaint for lack of probable cause;

(2) achieve satisfactory adjustment of the complaint as evidenced by order of the [Division]; or

(3) file a formal complaint on behalf of the [Division].

We do not dispute that such a mandatory provision requiring the Division to act in a timely manner may serve important purposes such as promoting expeditious review and protecting the parties from arbitrary and capricious delay. *See Redman v. Board of Regents,* 102 N.M. 234, 239, 693 P.2d 1266, 1271 (Ct.App.1984). In this instance, however, we reject the Union's construction of Section 28–1–10(G) because we cannot say that the Legislature intended the requirements of this section to be jurisdictional. *Cf. Redman,* 102 N.M. at 239, 693 P.2d at 1271 (concluding that a mandatory requirement of a timely hearing on the dismissal of a public school teacher was not "a jurisdictional requirement in the sense that the right to a timely hearing could not be waived").

{26} Section 28–1–10(G) does not expressly place a jurisdictional time limit on the issuance of orders of nondetermination. *Cf. High Ridge Hinkle Joint Venture v. City of Albuquerque,* 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (noting that the plain language of a statute is the primary indicator of legislative intent and that courts will not read into a statute language which is not there). In addition, we cannot reasonably infer such a jurisdictional time limit by reading Section 28–1–10(G) together with the provisions of the NMHRA concerning orders of nondetermination, *see* § 28–1–10(D), (F), or appeals from the Division's orders, *see* § 28–1–13. *Cf. High Ridge Hinkle Joint Venture,* 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599 ("[W]here several sections of a statute are involved, they must be read together so that all parts are given effect."). The dismissal referenced in Section 28–1–10(G)(1)

follows from a determination that "the complaint lacks probable cause." Section 28–1–10(B). The satisfactory adjustment referenced in Section 28–1–10(G)(2) and the filing of a formal complaint referenced in Section 28–1–10(G)(3) follow from a determination that "probable cause exists for the complaint." Section 28–1–10(C); *see also* § 28–1–10(F) (providing for issuance of a formal complaint in the Division's name if satisfactory adjustment is not achieved through persuasion and conciliation). Because all three of the actions listed in Section 28–1–10(G) require a *determination* by the Division, it is not logical to infer that Section 28–1–10(G) would place a jurisdictional time limit on a person's right to obtain an order of *nondetermination.*

{27} For these reasons, we conclude that neither the EEOC notices nor Section 28–1–10(G) deprive the orders of nondetermination of their validity for jurisdictional purposes. Because the EEOC notices did not trigger the statutory time limit for filing an appeal in the district court, and because Appellants timely filed a notice of appeal from the Division's orders of nondetermination as required by Section 28–1–13(A), we reverse the district court's order granting the Union partial summary judgment with respect to the NMHRA claims and remand for further proceedings on those claims.

### III.

{28} McLendon moved for summary judgment against all Appellants on their claims of prima facie tort, on the ground that his alleged misconduct "arguably" constituted an unfair labor practice under Section 8 of the National Labor Relations Act (NLRA), 29 U.S.C. § 158 (1994), and that Appellants' claims therefore were preempted by federal law. Appellants, on the other hand, argued that the ALJ had already determined that the conduct was not an unfair labor practice under the NLRA. They also argued that federal law did not preempt their claims for prima facie tort, because these claims would not require interpretation of a collective bargaining agreement.

{29} In their brief in chief before this Court, Appellants argue for reversal of the district court's dismissal of their prima facie tort claims without addressing the federal preemption issue. Nevertheless, we address this issue for two reasons. First, although the general rule is that we do not address issues raised for the first time in a reply brief, *see Hale v. Basin Motor Co.,* 110 N.M. 314, 321, 795 P.2d 1006, 1013 (1990), in this case the arguments in Appellants' reply brief regarding federal preemption are "directed only to new arguments or authorities presented in the answer brief." Rule 12–213(C) NMRA 1999; *see also Brashear v. Packers,* 118 N.M. 581, 583, 883 P.2d 1278, 1280 (1994) ("This rule expressly allows the appellant to address in its reply brief arguments not addressed in its brief in chief but asserted in the appellee's answer brief."). Second, the underlying issue on appeal is whether McLendon satisfied his burden in moving for summary judgment. McLendon's preemption arguments do not address all of the claims contained in the complaint. Thus, the district court's order dismissing "all claims" cannot be sustained on appeal.

{30} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. The issue on appeal is whether [McLendon] was entitled to [judgment] ... as a matter of law. We review these legal questions de novo." *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (citation omitted).

{31} In their district court complaint, Appellants make several allegations:

20. McLendon unilaterally declared his impeachment invalid and initiated proceedings to impeach and expel [Appellants] ... from the [Union].

21. The charges brought by McLendon were "frivolous, in some cases stale, in most cases petty, and [in] all cases clearly retaliatory."

22. The four cases against the [Appellants] were procedurally defective in numerous ways, the [Appellants] were denied information and materials they requested, they were tried in absentia and the trial

board rendered findings of guilty in a rubber stamp manner.

23. Mitchell–Carr was removed from Office, and Mitchell–Carr and Smith were permanently barred from membership in [the Union].

24. Vaughan and Herrera were removed from their trustee positions and their membership was suspended for five years.

25. Impeachment petitions were also brought against Anita Phillips and Josephina Graf, other members of the [Union's] Executive Board who had participated in McLendon's impeachment, but Phillips was not convicted and Graf was not tried. Phillips and Graf are white, [A]nglo females.

26. Other conduct by McLendon reveals, upon information and belief, his discriminatory intent, including but not limited to the removal of a disproportionate number of stewards who a[re] members of suspect classes.

27. McLendon also placed Tim Ashby, another white [A]nglo male, as an assistant to union-employer committees headed by African–Americans, but not committees headed by white Anglos. McLendon would then attend the meetings of these committees with Mr. Ashby rather than the African–American union representatives. Mr. Ashby also served the prosecutor in the impeachment trials of [Appellants].

28. Since the [Appellants] filed their administrative complaints, McLendon and [the Union] have engaged in additional activities, which upon information and belief were intended to harm and/or discriminate against the [Appellants], including but not limited to requesting that their employer, Sandia National Laboratory, fire the [Appellants] for failure to pay union dues (despite the fact that the [Appellants'] membership has been suspended or permanently barred).

 {32} The complaint alleges two distinct types of misconduct: (1) Paragraph 28 alleges actions intentionally injuring and discriminating against Appellants in causing their employer to discharge them on the ground that they failed to pay union dues, and (2) Paragraphs 20–27 allege actions intentionally injuring and discriminating against Appellants in having them removed from union office and barred or suspended from union membership. Section 8 of the NLRA preempts a cause of action arising from the first type of alleged misconduct, but neither party has addressed the second type of alleged misconduct. Because it was McLendon's burden to satisfy the district court that he was entitled to judgment as a matter of law, we conclude that we must remand this cause for further proceedings. We explain.

{33} Section 8 of the NLRA provides, in relevant part, that the following is an unfair labor practice by a labor organization and its agents:

> to cause or attempt to cause an employer to discriminate against an employee in violation of ... [29 U.S.C. § 158](a)(3) ... or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated *on some ground other than his failure to tender the periodic dues* and the initiation fees uniformly required as a condition of acquiring or retaining membership.

29 U.S.C. § 158(b)(2) (emphasis added). Title 29, Section 158(a)(3), in turn, provides:

> That no employer shall justify any discrimination against an employee for nonmembership in a labor organization ... (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons *other than the failure of the employee to tender the periodic dues and the initiation fees* uniformly required as a condition of acquiring or retaining membership.

29 U.S.C. § 158(a)(3) (emphasis added). From the plain language of NLRA Section 8, it is clear that a union agent is protected in causing or attempting to cause an employer to discriminate against an employee on the ground that the employee failed to pay union dues. It follows that this type of union conduct is "arguably" protected by the NLRA. *See generally* 2 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Trea-*

*tise* § 14.4, at 290 (3d ed.1994) (explaining that since [*San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) ], the "arguably-protected or prohibited standard" has been "the main guide" in determining preemption under the relevant sections of the NLRA). In the case before us, Appellants base part of their prima facie tort claims upon conduct, alleged in Paragraph 28 of their complaint, that expressly relates to employment discrimination. Under NLRA Section 8, this claim is preempted.

▮ {34} As for Appellants' allegations that McLendon intentionally injured and discriminated against them in having them removed from union office and barred or suspended from union membership, McLendon maintains that this type of conduct is also arguably protected or prohibited by Section 8 of the NLRA. We find this argument unpersuasive.

{35} .Paragraphs 20–27 of the complaint allege conduct that implicates internal union matters only. The portion of Section 8 that is relevant to these allegations states that it is an unfair labor practice by a labor organization or any of its agents:

> to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 [pertaining to the rights of employees to form labor organizations and to engage in collective bargaining] of this title: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein. . . .

29 U.S.C. 158(b)(1). This portion of NLRA Section 8 does not arguably protect or prohibit internal union matters. *See International Ass'n of Machinists v. Gonzales*, 356 U.S. 617, 620, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958); *cf. Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 295, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971) ("*Garmon* [ ] did not cast doubt upon the result reached in *Gonzales* . . . ."). Under federal labor law, internal union disputes are governed by the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), Pub.L. No. 86–257, 73 Stat.

519 (codified as amended in scattered sections of 29 U.S.C.). The LMRDA expressly provides that state claims are not preempted. *See* 29 U.S.C. § 413 (1994). For these reasons, we determine that Section 8 of the NLRA does not preempt a prima facie tort claim arising from the conduct alleged in Paragraphs 20–27 of the complaint.

{36} In light of the foregoing analysis, we conclude that McLendon has failed to show that there are no genuine issues of material fact and that he was entitled to summary judgment as a matter of law on the portion of Appellants' prima facie tort claims that is based on Paragraphs 20–27 of the complaint. Hence, the motion for summary judgment by McLendon must be viewed as a motion for partial summary judgment, and we conclude that McLendon has not addressed, and the district court has not yet ruled on, prima facie tort claims based on the allegations contained in Paragraphs 20–27 of the complaint. Accordingly, we affirm the district court's decision regarding Appellants' prima facie tort claims as a partial summary judgment but remand for entry of an amended judgment and further proceedings consistent with this opinion.

## IV.

▮ {37} We now turn to the points of error, raised by Appellants, that the district court improperly issued a protective order in favor of Youngdahl, inappropriately quashed the subpoena served upon Youngdahl, and unduly denied Appellants' motion to disqualify opposing counsel and opposing counsel's entire firm, which included Youngdahl. We review the district court's denial of Appellants' disqualification motion for an abuse of discretion. *See State v. Pennington*, 115 N.M. 372, 378–80, 851 P.2d 494, 500–02 (Ct. App.1993). Similarly, "[a] trial court's ruling limiting discovery is subject to reversal only upon a showing of an abuse of discretion." *DeTevis v. Aragon*, 104 N.M. 793, 797–98, 727 P.2d 558, 562–63 (Ct.App.1986); *accord Salitan v. Carrillo*, 69 N.M. 476, 481, 368 P.2d 149, 153 (1961). Given the facts before us, we are not persuaded that the district court abused its discretion in denying the

motion to disqualify or in its discovery rulings relating to Youngdahl.

{38} From the record and the briefs, the grounds on which Appellants based their motion to disqualify opposing counsel and the Youngdahl firm are not entirely clear. In their brief in chief, Appellants appear to rely on Rule 16–307 NMRA 1999, which governs a lawyer's appearance as a witness when he or she is also acting as an advocate (sometimes called the "advocate-witness rule"). In their reply brief, Appellants allude to the need to disqualify the Youngdahl firm on the basis of a conflict of interest under Rule 16–107 NMRA 1999. We decline to address grounds for disqualification that rely on Rule 16–107 because those grounds were raised for the first time in Appellants' reply brief, thus "foreclos[ing] a response from [A]ppellees." *Doe v. City of Albuquerque*, 96 N.M. 433, 436, 631 P.2d 728, 731 (Ct.App.1981); *see also* Rule 12–213(C) (stating that a reply brief "shall be directed only to new arguments or authorities presented in the answer brief").

{39} "Although the [Rules of Civil Procedure] favor the allowance of liberal pretrial discovery, the trial court is vested with discretion in determining whether to limit discovery." *DeTevis*, 104 N.M. at 797, 727 P.2d at 562 (citation omitted). Moreover, the burden of establishing that counsel should be disqualified lies with the party seeking disqualification. *See Pennington*, 115 N.M. at 378–79, 851 P.2d at 500–01. In this case, neither the record below nor the briefing in this Court justify a conclusion that the district court abused its discretion in denying the motion to disqualify Youngdahl's firm or in ruling on the discovery motions relating to Youngdahl. *See generally Chappell v. Cosgrove*, 1996–NMSC–020, ¶ 13, 121 N.M. 636, 916 P.2d 836 (reasoning that a party seeking disqualification pursuant to the advocate-witness rule must make a threshold showing of necessity); *Blake v. Blake*, 102 N.M. 354, 359, 695 P.2d 838, 843 (Ct.App.1985) (noting that the grounds for denying discovery requests may include lack of sufficient specificity, the speculative nature of the request, the fact that "the party requesting discovery has already been granted sufficient information,"

and the legitimate interest of a corporate entity and its shareholders "in the privacy of their business affairs and the right to be free from unreasonable harassment, disadvantage and expense").

{40} After a hearing on Appellants' motions, the district court concluded that the issue of the propriety of payments Youngdahl received from the Union was collateral to Appellants' claims against McLendon and the Union because a determination of the merits of Appellants' contentions regarding Youngdahl's billing was not needed to establish whether the Union or McLendon had unlawfully discriminated against them or whether McLendon had committed a prima facie tort. We cannot say that the district court's reasoning "is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996–NMSC–078, ¶ 65, 122 N.M. 618, 930 P.2d 153. Thus, no abuse of discretion occurred here. *See id.*

## V.

{41} We affirm the district court's order granting summary judgment and dismissing Appellants' NMHRA claims against McLendon with prejudice because McLendon was not named as an individual respondent in the administrative complaints that Appellants filed with the EEOC. We reverse the district court's order granting the Union summary judgment on the NMHRA claims of Mitchell–Carr, Smith, and Vaughan because these Appellants timely filed a notice of appeal from the orders of nondetermination issued by the Division and the district court erred in relying on their EEOC notices to determine the time limit for filing an appeal under Section 28–1–13(A). We remand for further proceedings on the NMHRA claim against the Union.

{42} Turning to Appellants' prima facie tort claims, we affirm the district court's order as a determination that McLendon was entitled to partial summary judgment on the conduct alleged in Paragraph 28 of the complaint because federal law preempts a prima facie tort claim based on such conduct. With respect to the conduct alleged in Paragraphs

20–27 of the complaint, we remand for entry of an amended judgment and further proceedings because McLendon has not shown that federal law preempts a prima facie tort claim arising from the conduct averred in those paragraphs, or that the district court addressed this alleged conduct. Finally, with respect to the discovery motions regarding Youngdahl and the motion to disqualify all of the Youngdahl firm, we affirm the district court's orders because there was no abuse of discretion. No costs are awarded.

{43} IT IS SO ORDERED.

BACA, FRANCHINI and SERNA, JJ., concur.