This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**THOMAS RABATIN,**
**Plaintiff-Appellant,**
**v.**
**GOVERNING BOARD GORDON BERNELL CHARTER SCHOOL,**
**Defendant-Appellee.**

Docket No. A-1-CA-35708
COURT OF APPEALS OF NEW MEXICO
May 7, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Carl J. Butkus, District Judge

**COUNSEL**

Gilpin Law Firm, LLC, Donald G. Gilpin, Christoperh P. Machin, Albuquerque, NM for Appellant

German Burnette & Associates, LLC, ,Jason M. Burnette, Elizabeth L. German, Albuquerque, NM for Appellee.

**JUDGES**

KRISTINA BOGARDUS, Judge. WE CONCUR:  M. MONICA ZAMORA, Chief Judge, LINDA M. VANZI, Judge

**AUTHOR:** KRISTINA BOGARDUS

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}**    Plaintiff Thomas Rabatin appeals from the district court's order granting summary judgment in favor of Defendant Governing Board Gordon Bernell Charter School (the Governing Board) and dismissing his claim under the Whistleblower Protection Act (WPA), NMSA 1978, Sections 10-16C-1 to -6 (2010). We affirm.

## BACKGROUND

**{2}** Plaintiff, a math teacher at Gordon Bernell Charter School (GBCS), was assigned to the school's Metropolitan Detention Center (MDC) campus. After security issues arose at that campus, MDC began an investigation and GBCS held a meeting to address those issues. Upset with how the meeting was handled, Plaintiff emailed Greta Roskom, the Director of GBCS, and asked to be placed on the agenda of the next meeting of the Governing Board to make a presentation. Plaintiff called Roskom after sending the email and told her that he "was going to tell the [G]overning [Board] the things that [he knew]."

**{3}** At the conclusion of its investigation, MDC revoked Plaintiff's security clearance. As a result, GBCS initiated the discharge process provided in the School Personnel Act (SPA), NMSA 1978, Sections 22-10A-1 to -39 (1967, as amended through 2018), by serving Plaintiff with a notice of intent to discharge for violations of school policy. *See* § 22-10A-27(A). Plaintiff exercised his right to a discharge hearing before the Governing Board, *see* § 22-10A-27(B), which the Governing Board held as required. *See* § 22-10A-27(C). Following the hearing, the Governing Board determined that there was just cause to discharge Plaintiff. *See* § 22-10A-27(A),(J). Plaintiff was advised he had a right to appeal the decision to an independent arbitrator. *See* § 22-10A-28.

**{4}** Plaintiff did not appeal the Governing Board's decision. Instead, he filed this action under the WPA in district court. The Governing Board filed two separate motions for summary judgment: one based on collateral estoppel and Plaintiff's failure to exhaust his administrative remedies under the SPA; the other arguing that undisputed material facts showed that Plaintiff's claim should be dismissed as a matter of law because Plaintiff did not make any "protected statements" as required by the WPA. The district court granted the Governing Board's second motion for summary judgment. Because the district court determined the second motion was dispositive, it did not decide the first motion.

## DISCUSSION

### I.      This Court Has Subject Matter Jurisdiction

**{5}** We asked the parties to brief the question of whether Plaintiff was required to exhaust the remedies provided under the SPA because it bears on the jurisdiction of the district court and this Court. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 20, 127 N.M. 282, 980 P.2d 65 (stating a failure to exhaust administrative remedies may deprive a district court of subject matter jurisdiction); *Madrid v. Vill. of Chama*, 2012-NMCA-071, ¶ 5, 283 P.3d 871 ("[A]ppeals from courts that lack subject matter jurisdiction will confer no jurisdiction on this Court."); *Armijo v. Save 'N Gain*, 1989-NMCA-014, ¶ 4, 108 N.M. 281, 771 P.2d 989 ("A jurisdictional defect may not be waived and may be raised at any stage of the proceedings, even sua sponte by the appellate court."). "Under the exhaustion of administrative remedies doctrine, where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of

redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Lucero v. Bd. of Regents of Univ. of N.M.*, 2012-NMCA-055, ¶ 9, 278 P.3d 1043 (internal quotation marks and citation omitted).

**{6}** "[T]he exhaustion doctrine exists because the interests of justice are best served by permitting the agency to resolve factual issues within its peculiar expertise." *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 26, 142 N.M. 786, 171 P.3d 300 (internal quotation marks and citation omitted). "Jurisdiction of the matters in dispute does not lie in the courts until the statutorily required administrative procedures are fully complied with." *In re Application of Angel Fire Corp.*, 1981-NMSC-095, ¶ 5, 96 N.M. 651, 634 P.2d 202. When a plaintiff fails to exhaust administrative remedies, thus depriving a district court of subject matter jurisdiction, dismissal of the complaint is appropriate. *Luboyeski v. Hill*, 1994-NMSC-032, ¶ 7, 117 N.M. 380, 872 P.2d 353; *Jaramillo v. J.C. Penney Co.*, 1985-NMCA-002, ¶ 4, 102 N.M. 272, 694 P.2d 528.

**{7}** Plaintiff contends that he is not required to exhaust administrative remedies under the SPA because his WPA claim is independent from the SPA. He relies on the absence of exhaustion language in the WPA and notes that our courts have allowed parties to pursue WPA claims while also seeking administrative remedies under other statutes.

**{8}** The Governing Board frames the issue as one of exclusivity of the SPA's remedies. It argues that because the SPA requires a specific administrative procedure to discharge a school employee, *see* §§ 22-10A-27, Plaintiff "cannot initiate proceedings under a comprehensive administrative scheme and, when dissatisfied with the results, abandon the appellate procedures under that scheme in favor of an action in district court based on the same facts seeking the same remedies." *See Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 24, 147 N.M. 523, 226 P.3d 622 (To determine whether the Legislature intended the claim filing provisions of an act to be exclusive, courts are to evaluate "the comprehensiveness of the administrative scheme, the availability of judicial review, and the completeness of the remedies afforded." (internal quotation marks and citation omitted)). According to the Governing Board, subject matter jurisdiction to consider Plaintiff's WPA claim is lacking because the comprehensive nature of the SPA's discharge procedures show that the SPA provides Plaintiff's exclusive remedies for his discharge.

## A.    Standard of Review

**{9}** To resolve this issue, we must construe both the SPA and the WPA, presenting a question of law subject to de novo review. *See Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61 ("The meaning of language used in a statute is a question of law that we review de novo."). "[O]ur guiding principle" in interpreting these statutes "is to determine and give effect to legislative intent." *Baker v. Hedstrom,* 2013-NMSC-043, ¶ 11, 309 P.3d 1047 (internal quotation marks and citation omitted). To do so, we first apply the statute's plain language, but "if an adherence to the literal use of the words would lead to injustice, absurdity[,] or contradiction, we will

construe the statute according to its obvious spirit or reason." *Id.* (alteration, internal quotation marks, and citation omitted). "We may consider the structure, context, history, and background of the statute, as well as the likely policy implications of various constructions." *Baker v. Hedstrom*, 2012-NMCA-073, ¶ 12, 204 P.3d 400 (alteration, internal quotation marks, and citation omitted); *see generally* the Uniform Statute and Rule Construction Act, NMSA 1978, §§ 12-2A-1 to -20 (1997).

## B. Plaintiff is Entitled to Bring His WPA Claim Before Exhausting the SPA Remedies

**{10}**   The SPA requires that the local school board or governing authority (the Board) must have just cause for discharging a school employee and follow the SPA's discharge procedures. *See* § 22-10A-27. To begin the discharge procedure, the superintendent must serve "written notice of his intent to recommend discharge on the certified school employee" that includes "the cause for his recommendation" and an advisement of the employee's "right to a discharge hearing before the [Board]."[1] Section 22-10A-27(A). The employee must then provide written notice that he intends to exercise his right to a hearing. Section 22-10A-27(B). After receiving written notice, the Board schedules, notices, and holds the discharge hearing. Section 22-10A-27(C). At the hearing, the superintendent has the burden of proving, by a preponderance of the evidence, that there was just cause for the discharge at the time of the discharge notice. Section 22-10A-27(G). The Board then decides whether the superintendent met that burden. Section 22-10A-27(J). Aggrieved employees may appeal the decision, first to an independent arbitrator and then to district court. Section 22-10A-28. The discharge procedures contained in the SPA embody the due process rights of school employees, who have a protected property right to notice and a hearing prior to discharge. *Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 1994-NMSC-096, ¶ 39, 118 N.M. 470, 882 P.2d 511; *West v. San Jon Bd. of Educ.*, 2003-NMCA-130, ¶ 11, 134 N.M. 498, 79 P.3d 842. If the employee is successful in either appeal, he or she may be awarded reinstatement and back pay. Section 22-10A-29(B).

**{11}**   The purpose of the SPA is "to promote a sound public policy of retaining in the public school system teachers who have become increasingly valuable by reason of their experience." *Atencio v. Bd. of Educ.*, 1982-NMSC-140, ¶ 9, 99 N.M. 168, 655 P.2d 1012 (concluding that this is the purpose of the Certified School Personnel Act, renamed in 1991 as the SPA). Valuable teachers should be retained in their positions as long as they are performing their duties in a satisfactory manner. *Id.* The just cause requirement for discharge furthers this purpose. *See, e.g.*, *Aguilera v. Bd. of Educ.*, 2006-NMSC-015, ¶¶ 16-22, 139 N.M. 330, 132 P.3d 587 (discussing the history of the SPA's just cause requirement).

**{12}**   The WPA provides a cause of action for public employees who suffered retaliation for communicating information about what they believe in good faith may

---

[1]The parties do not dispute that Plaintiff was a school employee entitled to the discharge procedures contained in the SPA, nor do they challenge Roskom's status as "superintendent" under the SPA.

constitute unlawful or improper actions by their public employers. In relevant part, Section 10-16C-3 of the WPA provides:

> A public employer shall not take any retaliatory action against a public employee because the public employee . . . communicates to the public employer . . . information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act[.][2]

The WPA defines "retaliatory action" and "unlawful or improper act" as follows:

> D.     'retaliatory action' means taking any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment; and
>
> E.     'unlawful or improper act' means a practice, procedure, action or failure to act on the part of a public employer that:
>
> (1)     violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state;
>
> (2)     constitutes malfeasance in public office; or
>
> (3)     constitutes gross mismanagement, a waste of funds, or abuse of authority or a substantial and specific danger to the public.

Section 10-16C-2(D), (E).

**{13}**    A public employee alleging a violation of the WPA may bring an action "in any court of competent jurisdiction." Section 10-16C-4(A). Public employers who violate the WPA are liable for

> actual damages, reinstatement with the same seniority status that the employee would have had but for the violation, two times the amount of back pay with interest on the back pay and compensation for any special damage sustained as a result of the violation. In addition, an employer shall be required to pay the litigation costs and reasonable attorney fees of the employee.

*Id.* The outlined remedies "are not exclusive and shall be in addition to any other remedies provided for in any other law or available under common law." Section 10-16C-4(C). The WPA was created "to encourage employees to report illegal practices without fear of reprisal by their employers." *Flores v. Herrera*, 2016-NMSC-033, ¶ 9, 384 P.3d 1070 (internal quotation marks and citation omitted).

---

[2]The parties do not dispute their respective statuses as public employer and public employee under the WPA.

**{14}** Unlike the SPA, the WPA does not delegate decision-making authority to an administrative agency and does not provide a process for appealing administrative decisions. Hence, the Governing Board's contention that Plaintiff must exhaust his administrative remedies before pursuing his WPA claim is not supported by the plain language of the WPA, which contains no exhaustion requirement. *See Janet v. Marshall*, 2013-NMCA-037, ¶ 9, 296 P.3d 1253 (when determining legislative intent we look first to the plain language of the statute and give words their ordinary meaning, unless the Legislature indicates a different meaning was intended).

**{15}** We note that the discharge procedure contained in the SPA was enacted prior to the enactment of the WPA. *Compare* §§ 22-10A-27,-28, *with* §§ 10-16C-1 to -6. If the Legislature intended that SPA's remedies must be exhausted in all WPA cases involving a public employee, it could have said so. *See Janet*, 2013-NMCA-037, ¶ 20 (relying on the "principle that the Legislature is fully aware of both statutory and common law when crafting statutes"). The Legislature did not do so, and we will not read such a requirement into the WPA. *See State ex rel. Barela v. N.M. State Bd. of Educ.*, 1969-NMSC-038, ¶ 7, 80 N.M. 220, 453 P.2d 583 ("We are not permitted to read into a statute language which is not there, particularly if it makes sense as written.").

**{16}** The Governing Board does not acknowledge that the WPA contains no exhaustion requirement, but instead urges us to rule that an exhaustion requirement exists nonetheless based on SPA exclusivity. The Governing Board's argument relies heavily on *Barreras v. New Mexico Corrections Department*, 2003-NMCA-027, 133 N.M. 313, 62 P.3d 770. We are not persuaded.

**{17}** In *Barreras*, after being discharged by their public employer, state employees filed a complaint in the district court alleging breach of implied employment contract, which was predicated on rights afforded state employees in the State Personnel Act, its related rules, regulations, and personnel policies. *Id.* ¶¶ 1, 6. The question presented was not "whether the State Personnel Act and attendant rules, regulations, and policies create enforceable rights in state employees" but "whether an aggrieved employee who wishes to enforce those rights may proceed directly to district court on a theory of implied contract based on those same statutory and administrative rights, and bypass the administrative procedure and remedies set forth in that same statute." *Id.* ¶ 7. This Court held that "when an employee's contractual claim arises from the State Personnel Act, as well as attendant rules, regulations, and agency personnel policies, the employee's remedies are limited to those set forth in the State Personnel Act[.]" *Id.* ¶ 1; *see id.* ¶ 21. In reaching this conclusion, we noted that review of any adverse employment action under the State Personnel Act "shall turn on the question of 'just cause,' " and that this was "precisely what [the p]laintiffs allege[d] in this lawsuit—that [employer] terminated them without 'just cause.' " *Id.* ¶ 12. Plaintiff's WPA claim does not seek to enforce rights created by the SPA but rather the distinct rights afforded by the WPA. *See* WPA Section 10-16C-3 ("A public employer shall not take any retaliatory action against a public employee because the public employee . . . communicates to the public employer . . . information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act[.]")

**{18}**   The Governing Board argues that the "core remedies" provided by the SPA and the WPA (reinstatement and back pay) are the same, again relying on *Barreras*. In that case, we stated that the differences in remedies available to a plaintiff under the State Personnel Act and in a breach-of-employment-contract action were not significant because the "State Personnel Act mirrors the core of what is ordinarily available as compensatory damages in a breach-of-employment-contract lawsuit." *Id.* ¶ 15. This aspect of *Barreras* also is inapposite. The SPA allows for reinstatement and back pay, *see* § 22-10A-29(B), but the WPA's remedies include actual and special damages, damages that are punitive in nature, and costs and attorneys' fees, *see* § 10-16C-4(A) (providing non-exclusive remedies of two-times back pay plus interest, compensation for actual and special damages, and litigation costs and reasonable attorney fees for prevailing employees). Accordingly, we reject the Governing Board's "core remedies" argument as requiring the conclusion that the SPA provides exclusive remedies for Plaintiff's WPA claim.

**{19}**   We conclude that Plaintiff is entitled to bring his WPA claim without first exhausting the SPA's administrative remedies; therefore, this Court has subject matter jurisdiction over this appeal.

## II.      The District Court Correctly Entered Summary Judgment

## A.      Standard of Review

**{20}**   "Summary judgment is reviewed on appeal de novo." *Romero v. Phillip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted).

> Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Where reasonable minds will not differ as to an issue of material fact, the court may properly grant summary judgment. All reasonable inferences are construed in favor of the non-moving party.

*Id.* (internal quotation marks and citation omitted). "[S]ummary judgment may be proper when the moving party has met its initial burden of establishing a prima facie case for summary judgment." *Id.* ¶ 10; *see also Goodman v. Brock*, 1972-NMSC-043, ¶ 8, 83 N.M. 789, 498 P.2d 676 ("By a prima facie showing is meant such evidence as sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted."). Once the movant has made a prima facie showing, the non-movant must "demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241. "A party may not simply argue that such [evidentiary] facts might exist, nor may it rest upon the allegations of the complaint." *Dow v. Chilili Coop. Ass'n*, 1986-NMSC-084, ¶ 13, 105 N.M. 52, 728 P.2d 462. Rather, the non-movant "must adduce evidence to justify a trial on the issues. Such evidence adduced must result in reasonable inferences." *Romero*, 2010-NMSC-035, ¶ 10 (internal quotation marks and citation omitted).

**B.      Plaintiff Failed to Establish the Existence of a Genuine Issue of Material Fact**

**{21}**      The WPA prohibits public employers from retaliating against public employees for "communicat[ing] to the public employer . . . information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act[.]" Section 10-16C-3. Under the WPA, "unlawful or improper act" is defined, in relevant part, as "a practice, procedure, action or failure to act on the part of the public employer that . . . violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state[.]" Section 10-16C-2(E)(1). The district court concluded that the Governing Board was entitled to judgment as a matter of law because Plaintiff's communications failed to satisfy the standard set forth in Section 10-16C-3. We agree.

**{22}**      After becoming upset with how a security-violations meeting was handled, Plaintiff emailed Roskom and asked to be placed on the agenda of the next meeting of the Governing Board to make a presentation. After sending the email, Plaintiff called Roskom and told her that he "was going to tell the [Governing Board] the things that [he knew]." Plaintiff admits that this was the extent of their telephone conversation. These material facts are not in dispute.

**{23}**      Plaintiff's argument appears to be that Roskom had knowledge of his previous allegations of illegal activity and therefore knew that Plaintiff was going to be reporting that illegal activity when he asked to make a presentation at the next meeting of the Governing Board and made the follow-up phone call. Plaintiff contends that this satisfies Section 10-16C-3's requirement that the "public employee . . . communicates to the public employer . . . information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act." We are not persuaded.

**{24}**      Plaintiff's statements in his email and follow-up phone call failed to convey any information regarding any "practice, procedure, action or failure to act" or any "unlawful or improper act" by GBCS. To the extent that Plaintiff contends that Roskom's knowledge of his previous allegations of improprieties taken together with Plaintiff's cryptic comments via email and phone are sufficient to satisfy Section 10-16C-3 or to create a genuine dispute of material fact requiring trial on the point, we disagree. Plaintiff's contentions about what Roskom purportedly knew is speculation, which cannot be considered on summary judgment. *See, e.g.*, *Pavlos v. Albuquerque Nat'l Bank*, 1971-NMCA-096, ¶ 24, 82 N.M. 759, 487 P.2d 187 (stating that speculation does not support an inference sufficient to raise a fact issue for the jury). Nor has Plaintiff presented evidence sufficient to support a reasonable inference as to what Plaintiff planned to tell the Governing Board at its next meeting.[3] "An inference is more than a

_____

[3]Plaintiff also contends that an employer should not be able to avoid liability under the WPA by terminating an employee after the employee announces his or her intention to report illegal acts but before the employee makes the report. Assuming, without deciding, that Plaintiff's contention is correct, the facts of this case do not fit such a

supposition or conjecture. It is a logical deduction from facts which are proven, and guess work is not a substitute therefor." *Bowman v. Inc. Cty. of Los Alamos*, 1985-NMCA-040, ¶ 9, 102 N.M. 660, 699 P.2d 133 (internal quotation marks and citation omitted); *see also Romero*, 2010-NMSC-035, ¶ 10 ("When disputed facts do not support reasonable inferences, they cannot serve as a basis for denying summary judgment."); *Samora v. Bradford*, 1970-NMCA-004, ¶ 6, 81 N.M. 205, 465 P.2d 88 (stating a reasonable inference is "a conclusion arrived at by a process of reasoning" which is "a rational and logical deduction from facts admitted or established by the evidence").

**{25}** Plaintiff failed to establish any genuine issue of material fact in dispute, and the district court properly entered summary judgment in favor of the Governing Board.

**CONCLUSION**

**{26}** For the reasons set forth above, we affirm the district court.

**{27}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**LINDA M. VANZI, Judge**

---

scenario because Plaintiff did not inform Roskom of what he planned to share at the Governing Board meeting, nor did he announce an intention to report illegal acts at GBCS. Therefore, we do not address this argument further.